WILLIAM R. BOSWELL AND JUDY M. BOSWELL, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

WILLIAM R. BOSWELL AND AGNES C. BOSWELL, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 28059-85, 29428-85.     Filed July 26, 1988

*Robert E. Panoff,* for the petitioners.
*Theodore J. Kletnick* and *Nancy B. Romano,* for the respondent.

152

OPINION

SWIFT, *Judge:* This matter is before the Court on the parties' cross-motions for summary judgment. The stipulated legal issue for decision concerns the test for determining whether commodity straddle transactions were entered into for profit within the meaning of section 108(a) of the Tax Reform Act of 1984, Pub. L. 98-369, 98 Stat. 494, 630, as amended by section 1808(d) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2817-2818. Hereinafter, all references to section 108 will be to section 108 of the Tax Reform Act of 1984, *supra.* References to amended section 108 will be to section 108, as amended by section 1808(d) of the Tax Reform Act of 1986, *supra,*.

Petitioners contend that the profit-motive test of section 108(a) and amended section 108(a) requires only that commodity straddle transactions entered into by a taxpayer, who is not a dealer, have a reasonable prospect of realizing any profit, regardless of the motive of the taxpayer for entering into the transactions. Respondent, on the other hand, contends that even if the transactions, in light of the vicissitudes of the marketplace, have a reasonable possibility of realizing any profit, the test of section 108(a) and amended section 108(a) requires that the taxpayer's primary motive for entering into the transactions must be to realize a profit. The parties have stipulated a settlement of all other legal and factual issues, including what deductions and other tax benefits will be allowed with respect to the straddle transactions depending on which for-profit test the Court adopts.

In timely statutory notices of deficiency, respondent determined deficiencies in petitioners' 1979, 1980, and 1981 Federal income taxes and an addition to tax as follows:

| Year | Petitioners | Deficiency | Addition to tax sec. 6651(a)(1)[1] |
|------|-------------|------------|------------|
| 1979 | William R. Boswell and Agnes C. Boswell | $55,664 | - - - |
| 1980 | William R. Boswell and Judy M. Boswell | 85,535 | $13,599.75 |
| 1981 | William R. Boswell and Judy M. Boswell | 129,131 | - - - |

[1]All section references, with the exception of sec. 108, are to the Internal Revenue Code of 1954 as in effect during the years in issue.

Petitioners resided in Temple Terrace, Florida, at the time their petitions herein were filed. Petitioner William R. Boswell timely filed a joint Federal income tax return for 1979 with his then-wife, Agnes C. Boswell. Mr. Boswell timely filed joint Federal income tax returns for 1980 and 1981 with his then-wife Judy M. Boswell. Hereinafter, all references to petitioner will be to William R. Boswell.

During 1979 and 1980, petitioner owned a 1.98-percent limited partnership interest in Worcester Partners. Worcester Partners engaged in commodity straddle transactions with respect to options in U.S. Treasury bills. These transactions will be referred to hereinafter as the "Worcester T-Bill straddle transactions."

The parties have stipulated that the Worcester T-Bill straddle transactions were executed through Arbitrage Management Investment Co. and in all relevant respects are the same as the Treasury bill straddle transactions involved in *Fox v. Commissioner*, 82 T.C. 1001 (1984). We described those straddle transactions as follows:

All of the [taxpayer's] transactions were in put options, which are options to sell an underlying security at a particular price, on or before a particular date. All of [taxpayer's] transactions in put options were structured to establish positions known as vertical put spreads. A spread is a hedged position comprised of two substantially offsetting options positions. With a given change in the price of the underlying security, one option will appreciate in value while the other option will depreciate in value. The spread is ordinarily composed of one "long leg"—a purchased option—and one "short leg"—a sold (or granted) option. A vertical spread is a spread comprised of two options with the same expiration date but different strike prices. [*Fox v. Commissioner, supra* at 1002-1003. Fn. refs. omitted.[2]]

The parties have stipulated that at the time the Worcester T-Bill straddle transactions were entered into, the transactions had the potential to realize a modicum of economic profit, but that the partnership and petitioner did not enter into these transactions with the primary or dominant motive to derive an economic profit therefrom.

On its 1979 and 1980 Federal partnership tax returns (Forms 1065), Worcester Partners reported ordinary losses

---

[2]A more detailed description of the Treasury bill options market arranged by Arbitrage Management Investment Co. is found in *Fox v. Commissioner*, 82 T.C. 1001, 1003-1004, 1008-1011 (1984).

and short-term capital gains with respect to the Worcester T-Bill straddle transactions as follows:

| Year | Ordinary losses on straddle transactions | Short-term capital gain on straddle transactions |
|------|------------------------------------------|--------------------------------------------------|
| 1979 | $5,479,342 | $1,709,094 |
| 1980 | 6,678,550 | 10,245,205 |

Petitioner reported his proportionate share of Worcester Partners' ordinary losses and short-term capital gains on his and his wife's 1979 and 1980 joint Federal income tax returns in the following amounts:

| Year | Proportionate share of partnership ordinary losses | Proportionate share of partnership short-term capital gains |
|------|----------------------------------------------------|-------------------------------------------------------------|
| 1979 | $111,345 | $12,296 |
| 1980 | 113,993 | [3]98,397 |

Petitioner also claimed investment interest expenses on his 1980 joint Federal income tax return in the amount of $23,086 with respect to his interest in Worcester Partners. Petitioner's total deduction for 1980, therefore, with respect to his limited partnership interest in Worcester Partners was $137,079 ($113,993 plus $23,086 equals $137,079).

In notices of deficiency, respondent disallowed the $111,345 and the $137,079 in loss deductions claimed by petitioner in 1979 and 1980, in relation to petitioner's interest in Worcester Partners. Other adjustments made by respondent have been settled by the parties.

As explained, petitioner and respondent dispute the appropriate for-profit test of section 108(a) and amended section 108(a) with respect to commodity straddle transactions. Section 108 was enacted in 1984 and was amended in 1986.[4] Section 108, as enacted and as amended, applies to

---

[3]The Schedule K-1 attached to Worcester Partners' partnership return for 1980 indicates that petitioner's share of partnership net short-term capital gain for 1980 is $98,775. There is no explanation in the record for the discrepancy between the $98,775 reported by the partnership and the $98,397 reported by petitioner.

[4]As originally enacted in 1984, sec. 108 of the Tax Reform Act of 1984, Pub. L. 98-369, 98 Stat. 494, 630, provided as follows:

SEC. 108. TREATMENT OF CERTAIN LOSSES ON STRADDLES ENTERED INTO BEFORE EFFECTIVE DATE OF ECONOMIC RECOVERY TAX ACT OF 1981.

(a) GENERAL RULE.—For purposes of the Internal Revenue Code of 1954, in the case of any disposition of 1 or more positions—

(1) which were entered into before 1982 and form part of a straddle, and

dispositions of straddle positions which were entered into before June 23, 1981, which is the effective date of new tax provisions of the Economic Recovery Tax Act of 1981 that were applicable generally to all commodity straddle transactions.[5] Amended section 108 therefore applies retroactively to the Worcester T-Bill straddle transactions at issue herein.

Under both the language of section 108(a) and amended section 108(a), losses incurred by taxpayers from dispositions of positions in commodity straddle transactions are allowable only if the positions were part of transactions "entered into for profit."[6]

---

(2) to which the amendments made by title V of the Economic Recovery Tax Act of 1981 do not apply,

any loss from such disposition shall be allowed for the taxable year of the disposition if such position is part of a transaction entered into for profit.

(b) PRESUMPTION THAT TRANSACTION ENTERED INTO FOR PROFIT.—For purposes of subsection (a), any position held by a commodities dealer or any person regularly engaged in investing in regulated futures contracts shall be rebuttably presumed to be part of a transaction entered into for profit.

(c) NET LOSS ALLOWED WHETHER OR NOT TRANSACTION ENTERED INTO FOR PROFIT.—If any loss with respect to a position described in paragraphs (1) and (2) of subsection (a) is not allowable as a deduction (after applying subsections (a) and (b)), such loss shall be allowed in determining the gain or loss from dispositions of other positions in the straddle to the extent required to accurately reflect the taxpayer's net gain or loss from all positions in such straddle.

Sec. 108, as amended by sec. 1808(d) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2817-2818, provides, in relevant part, as follows:

SEC. 108. TREATMENT OF CERTAIN LOSSES ON STRADDLES ENTERED INTO BEFORE EFFECTIVE DATE OF ECONOMIC RECOVERY TAX ACT OF 1981.

(a) GENERAL RULE.—For purposes of the Internal Revenue Code of 1954, in the case of any disposition of 1 or more positions—

(1) which were entered into before 1982 and form part of a straddle, and

(2) to which the amendments made by title V of the Economic Recovery Tax Act of 1981 do not apply,

any loss from such disposition shall be allowed for the taxable year of the disposition if such loss is incurred in a transaction entered into for profit though not connected with a trade or business.

(b) LOSS INCURRED IN A TRADE OR BUSINESS.—For purposes of subsection (a), any loss incurred by a commodities dealer in the trading of commodities shall be treated as a loss incurred in a trade or business.

[5]Congress, in secs. 501-509 of the Economic Recovery Tax Act of 1981, Pub. L. 97-34, 95 Stat. 172, 323-334, eliminated certain favorable tax consequences of commodity straddle transactions. Generally, loss deductions relating to commodity straddle transactions were denied except to the extent such losses exceed unrealized gains on offsetting straddle positions. See *Fox v. Commissioner, supra* at 1017.

[6]Special rules are provided in sec. 108(b) and amended sec. 108(b) for commodities dealers and others who were regularly engaged in investing in straddle transactions prior to June 23, 1981. Sec. 108(b) provided that commodity straddle transactions that were entered into by commodities dealers and others who regularly invested in regulated futures contracts "shall be rebuttably presumed" to have been entered into for profit. Amended sec. 108(b) provides

Were it not for a number of conflicting opinions of this and other courts interpreting the for-profit language of section 108(a) and amended section 108(a), we would summarily conclude that that explicit language adopts the traditional and well-established primary for-profit test.[7] Because of conflicting authority, however, that has developed concerning the proper interpretation of section 108(a) and amended section 108(a), it is appropriate to review that authority.

The first case to interpret section 108(a) was *Miller v. Commissioner*, 84 T.C. 827 (1985), revd. 836 F.2d 1274 (10th Cir. 1988). In that Court-reviewed opinion, this Court, based on certain legislative history relating to section 108(a) as originally enacted, limited the for-profit test of section 108(a) to an analysis of whether the transaction in question had "a reasonable prospect of any profit." *Miller v. Commissioner*, 84 T.C. at 842. Under that test, even though the taxpayer's primary motive for entering into a particular transaction was to obtain tax losses, the losses would be allowed so long as it "can be said" that the transaction had a reasonable prospect of any profit. *Miller v. Commissioner*, 84 T.C. at 842.

Two Tax Court Memorandum Opinions were filed soon after we decided *Miller*, both of which followed the *Miller* analysis and allowed straddle-related losses in spite of the absence of any significant profit motive underlying the transactions in question. See *Landreth v. Commissioner*, T.C. Memo. 1985-413, affd. 845 F.2d 828 (9th Cir. 1988); *Kurtz v. Commissioner*, T.C. Memo. 1985-410, revd. 836 F.2d 1274 (10th Cir. 1988).

As explained, in 1986 Congress amended section 108(a) with retroactive effect to clarify the meaning of the for-profit test of section 108(a) in light of the above-cited Tax Court opinions. Concerning the purpose for the 1986

---

generally that losses realized by registered commodities dealers in the trading of commodities shall be treated as losses incurred in a trade or business.

[7]For cases utilizing the primary for-profit test under sec. 165(c)(2) or the predecessor thereof, see *Helvering v. National Grocery Co.*, 304 U.S. 282, 289 n. 5 (1938); *King v. United States*, 545 F.2d 700, 708-709 (10th Cir. 1976); *Austin v. Commissioner*, 298 F.2d 583, 584 (2d Cir. 1962); *Weir v. Commissioner*, 109 F.2d 996, 997-998 (3d Cir. 1940); *Knetsch v. United States*, 172 Ct. Cl. 378, 384-386, 348 F.2d 932, 936-938 (1965); *Fox v. Commissioner, supra* at 1018-1022; *Smith v. Commissioner*, 78 T.C. 350, 390-391 (1982), affd. without published opinion 820 F.2d 1220 (4th Cir. 1987).

amendment to section 108(a) and concerning this Court's conclusion in *Miller* that the for-profit test of that section did not require a primary profit motive, the report of the Committee on Ways and Means explaining the amendment to section 108(a) provides the following significant explanation:

> A majority of the United States Tax Court in *Miller* interpreted section 108 as providing a new, less stringent profit standard for losses incurred with respect to pre-1981 commodity straddles. It was not the intent of Congress in enacting section 108 to change the profit-motive standard of section 165(c)(2) or to enact a new profit-motive standard for commodity straddle activities. This technical correction is necessary to end any additional uncertainty created by the *Miller* case. [H. Rept. 99-426, to accompany H.R. 3838 (Pub. L. 99-514), at 911 (1985), 1986-3 C.B. (Vol. 2) 911.[8]]

In spite of the 1986 clarifying amendment to section 108(a), the Ninth Circuit in two recent opinions adopted essentially the same for-profit test reflected in this Court's *Miller* opinion (viz, that the for-profit test of section 108(a) only requires a conclusion that a particular straddle transaction had a reasonable prospect of realizing some profit, even though the investors did not have a primary profit motive). See *Wehrly v. United States,* 808 F.2d 1311, 1314-1315 (9th Cir. 1986), and *Landreth v. Commissioner,* 845 F.2d 828 (9th Cir. 1988), petition for en banc rehearing filed May 10, 1988. See also *Sochin v. Commissioner,* 843 F.2d 351, 353-354 n. 6 (9th Cir. 1988). It is noteworthy that in *Landreth* the three-judge Ninth Circuit panel considered itself obliged to follow the Ninth Circuit's earlier opinion in *Wehrly,* even though the three members of the *Landreth* panel unanimously agreed that *Wehrly* and our opinion in *Miller* were wrongly decided. *Landreth v. Commissioner, supra* at 832.

In *Glass v. Commissioner,* 87 T.C. 1087 (1986) (Court-reviewed), decided November 17, 1986, one month after the 1986 amendment to section 108(a) was enacted, we stated that under amended section 108(a), and regardless of our earlier opinion in *Miller*—

---

[8]We acknowledge the colloquy on the floor of the Senate between Senator Dole and Senator Packwood regarding the amendment to sec. 108(a), 132 Cong. Rec. S13956 (daily ed. Sept. 27, 1986), and the statement by Representative Rostenkowski in response to that colloquy, 132 Cong. Rec. E3391 (daily ed. Oct. 2, 1986). As we did in *Glass v. Commissioner,* 87 T.C. 1087, 1169 (1986), we have considered that colloquy and statement in reaching our conclusion herein.

Investors * * * must meet the test of loss incurred in a transaction entered into for profit. In the context of * * * straddle transactions, the investor language parallels the section 165(c)(2) language which we construed in *Smith* and *Fox* and (except as to commodities dealers) we think the effect of amended section 108 is to revalidate our holdings in those cases. [*Glass v. Commissioner, supra* at 1167.]

To the same effect, see *Freytag v. Commissioner*, 89 T.C. 849, 882-884 (1987); *Marcus v. Commissioner*, T.C. Memo. 1988-3, 54 T.C.M. 1452, 1459-1460, 57 P-H Memo T.C. par. 88,003, at 19-21; *Mosher v. Commissioner*, T.C. Memo. 1987-231, 53 T.C.M. 764, 766-767, 56 P-H Memo T.C. par. 87,231, at 1115.

Reversing this Court's opinions in *Miller* and *Kurtz*, the 10th Circuit recently considered the original language of section 108(a) and held that, in order to sustain the losses claimed, the for-profit test of section 108(a) requires a finding that the taxpayer had a primary profit motive for entering into particular commodity straddle transactions. *Miller v. Commissioner*, 836 F.2d 1274 (10th Cir. 1988). The 10th Circuit stated that—

The meaning of "transaction entered into for profit" has been settled at least since 1938, when the Supreme Court indicated that a subjective standard is applied and the taxpayer's primary motive must be one of profit. * * * [836 F.2d at 1280.]

The 10th Circuit also commented that the "reasonable prospect of any profit" test of our opinion in *Miller* effectively rendered irrelevant the taxpayer's intent or motive for entering into the transactions. *Miller v. Commissioner, supra* at 1284.[9]

Based upon the above authorities, our reading of amended section 108(a), as well as the legislative history with respect thereto, we conclude that under amended section 108(a)

[9]Other court opinions that involve loss deductions arising from commodity straddle transactions and that have been decided on the basis of either the sham transaction doctrine or the special rules of sec. 108(b) are the following: *Katz v. Commissioner*, 90 T.C. 1130 (1988); *Cook v. Commissioner*, 90 T.C. 975 (1988); *King v. Commissioner*, 87 T.C. 1213 (1986); *Glass v. Commissioner*, 87 T.C. 1087 (1986); *Perlin v. Commissioner*, 86 T.C. 388 (1986); *Forseth v. Commissioner*, 85 T.C. 127 (1985), affd. 845 F.2d 746 (7th Cir. 1988), affd. sub nom. *Enrici v. Commissioner*, 813 F.2d 293 (9th Cir. 1987), affd. without published opinion sub nom. *Bramblett v. Commissioner*, 810 F.2d 197 (5th Cir. 1987), affd. sub nom. *Mahoney v. Commissioner*, 808 F.2d 1219 (6th Cir. 1987), affd. without published opinion sub nom. *Wooldridge v. Commissioner*, 800 F.2d 266 (11th Cir. 1986); *Brown v. Commissioner*, 85 T.C. 968 (1985), affd. sub nom. *Sochin v. Commissioner*, 843 F.2d 351 (9th Cir. 1988); *DeMartino v. Commissioner*, T.C. Memo. 1986-263, modified 88 T.C. 583 (1987).

investors in commodity straddle transactions must establish that they entered into straddle transactions primarily for profit in order to deduct related losses. In our opinion, in light of the 1986 amendment to section 108(a), there no longer can be any serious doubt as to the proper profit-motive test that applies to commodity straddle transactions entered into before June 23, 1981. In light of the retroactive effect of amended section 108(a), our prior opinion in *Miller* will no longer be followed.

Petitioner argues that if we determine, as we have, that amended section 108(a) retroactively requires investors in straddle transactions to satisfy a primary for-profit test, petitioner's constitutional rights will be violated. Petitioner argues that this test constitutes such a significant change in the for-profit test of section 108(a) that it would violate his due process rights and those of other taxpayers who relied on the section 108(a) for-profit test if the test of amended section 108(a) is applied retroactively. We disagree.

As explained above, section 108(a), as enacted in 1984 and as amended in 1986, only applies to straddle transactions entered into before June 23, 1981. Taxpayers such as petitioner who entered into commodity straddle transactions before June 23, 1981, could not possibly have relied on statutory language adopted more than 2 years later.

Before the enactment of section 108(a), investors had to satisfy a primary for-profit test to support loss deductions relating to commodity straddle transactions. See *Fox v. Commissioner, supra* at 1018-1021. As we have held, this is the same test reflected in the 1986 amendment to section 108(a). Therefore, the retroactive application of the for-profit test of amended section 108(a) simply confirms and clarifies that the for-profit test applicable to investors under section 108(a) is the same test that applied when petitioner entered into the transactions in question. The mere existence of a conflict among a number of courts over the interpretation of section 108(a), as originally enacted, raises no constitutional issue.

In addition to the stipulated legal issue herein, on brief petitioners asks us to adopt an "objective analytical model" to utilize in future cases in applying the for-profit test of

amended section 108(a). Any such holding would be beyond the scope of the legal issue before us. As explained, the parties have stipulated how this case will be settled depending on the resolution of one legal issue. Having resolved that issue, there remains only the implementation by the parties of the terms of their settlement agreement.

Petitioners' motion for summary judgment will be denied, and respondent's motion for summary judgment will be granted.

*An appropriate order will be entered.*

Reviewed by the Court.

NIMS, CHABOT, PARKER, WHITAKER, KÖRNER, SHIELDS, HAMBLEN, CLAPP, JACOBS, WRIGHT, PARR, WELLS, and WHALEN, *JJ.,* agree with this opinion.

GERBER, WILLIAMS, and RUWE, *JJ.,* did not participate in the consideration of this case.