Ivan K. LANDRETH; Lucille Landreth, Petitioners–Appellants,

v.

**COMMISSIONER INTERNAL REVENUE SERVICE,** Respondent–Appellee.

Nos. 86–7588, 86–7636.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 8, 1987.

Decided Oct. 4, 1988.

Robert J. Shaw, Short Cressman & Burgess, Seattle, Wash., for petitioners-appellants.

Kenneth L. Greene, Dept. of Justice, Washington, D.C., for respondent-appellee.

Before FLETCHER and NORRIS, Circuit Judges, and MacBRIDE[*], District Judge.

## ORDER

The petition for rehearing is granted. This court's opinion, *Landreth v. Commissioner*, 845 F.2d 828 (9th Cir.1988), filed on April 26, 1988, is hereby vacated.

[*] Honorable Thomas J. MacBride, Senior United States District Judge for the Eastern District of California, sitting by designation.

1. For a technical explanation of straddle transactions, *see Miller v. Commissioner*, 836 F.2d 1274, 1276 (10th Cir.1988).

## OPINION

WILLIAM A. NORRIS, Circuit Judge:

The principal issue in this case is whether the Landreths (taxpayers) can deduct losses from commodity futures "straddles,"[1] incurred in 1978, if their primary motive for entering into those straddle transactions was to create tax losses rather than to realize a profit. Unless engaged in a trade or business, taxpayers can deduct losses from straddle transactions only if the losses are "incurred in a transaction entered into for profit" within the meaning of section 108 of the Deficit Reduction Act of 1984, Pub.L. No. 98–369, 98 Stat. 494, 630 ("section 108").[2] Our circuit and the Tenth Circuit have disagreed as to whether this language embodies an objective "reasonable prospect of any profit" standard or a subjective "primarily for profit" standard. In *Wehrly v. United States*, 808 F.2d 1311 (9th Cir.1986), our circuit interpreted the language of section 108 as "requir[ing] the investor to have only a reasonable expectation of a profit. Profit must be a motive but not necessarily the primary motive for entering into a transaction." *Id.* at 1312. In *Miller v. Commissioner*, 836 F.2d 1274 (10th Cir.1988), the Tenth Circuit, expressly disagreeing with *Wehrly*, interpreted section 108 as incorporating a subjective "primarily for profit" standard. *Id.* at 1285, 1287.

## I

Before section 108 was enacted in 1984, it was unclear when a taxpayer could deduct the losses from a commodity futures straddle. In 1977, the IRS took the position that losses on one leg of a straddle were not completed transactions and thus could not be realized until the taxpayer disposed of the other leg. *See* Rev.Rul. 77–185, 1977–1 C.B. 48. In *Smith v. Com-*

2. Section 108 provides in pertinent part: "[I]n the case of any disposition of 1 or more positions ... [that] form part of a straddle ... any loss from such disposition shall be allowed for the taxable year of the disposition if such position is part of a transaction entered into for profit."

missioner, 78 T.C. 350, 385–94 (1982), aff'd, 820 F.2d 1220 (4th Cir.1987) (unpublished opinion), the Tax Court rejected this view and went on to hold that a taxpayer could not realize a loss in year one unless he could show that the straddle transaction was "entered into for profit" under section 165(c)(2),[3] which has long been construed as imposing a subjective standard requiring that the taxpayer's motive in entering the transaction be "primarily for profit." *See Helvering v. National Grocery Co.*, 304 U.S. 282, 289 n. 5, 58 S.Ct. 932, 936 n. 5, 82 L.Ed. 1346 (1938). Because the IRS continued to litigate the issue, Congress became concerned about the volume of litigation arising from the conflict between the IRS and the Tax Court over whether losses on one leg of a commodity futures straddle constituted a completed transaction. *See* H.R.Conf.Rep. No. 861, 98th Cong., 2d Sess. 916–17, *reprinted in* 1984 U.S.Code Cong. & Admin.News 697, 1445, 1604–05. Accordingly, in 1984 Congress adopted section 108 for all straddles entered into before 1982.[4] Section 108 settled the dispute by coming down on the side of the Tax Court: "[I]n the case of any disposition of 1 or more positions ... [that] form part of a straddle ... any loss from such disposition shall be allowed for the taxable year of the disposition if such position is part of a transaction entered into for profit." Pub. L. No. 98–369, 98 Stat. 494, 630 (1984).

Although section 108 resolved the conflict over *when* the losses on one leg of a straddle could be deducted, its language presented a new question, namely the meaning of "entered into for profit." Since this language is identical to the language of section 165(c)(2), the statute on its face strongly suggests that Congress intended the subjective "primarily for profit" standard of section 165(c)(2) to govern under section 108 as well. Nonetheless, in *Miller v. Commissioner*, 84 T.C. 827 (1985) (10–8)[5], a sharply divided Tax Court held that the "entered into for profit" language of section 108 was sufficiently ambiguous to warrant study of the legislative history, 84 T.C. at 834–46. In considering the legislative history the Tax Court focused on the following statement in the Conference Report: "'In determining whether the position is part of a transaction entered into for profit, it is intended that the provision be applied by treating the condition as satisfied *if there is a reasonable prospect of any profit* from the transaction.'" 84 T.C. at 839 (quoting H.R.Conf.Rep. No. 861, 98th Cong., 2d Sess. 917, *reprinted in* 1984 U.S.Code Cong. & Admin.News 697, 1445, 1605) (emphasis provided in *Miller*). After reviewing this legislative history, the Tax Court in *Miller* concluded that section 108 dispensed with the subjective "primarily for profit" standard:

> We hold that section 108 adopts an objective test and directs that losses be allowed on the disposition of a position if that particular straddle transaction can be said to have held "a reasonable prospect of any profit" at the time the straddle was acquired.

84 T.C. at 842.

The Tenth Circuit has since reversed the Tax Court in *Miller*, 836 F.2d at 1276,

---

**3.** Section 165 provides in part:

(a) General rule.—There shall be allowed as a deduction any loss sustained during the taxable year and not compensated by insurance or otherwise....

(c) Limitation on losses of individuals.—In the case of an individual, the deduction under subsection (a) shall be limited to— ...

(2) losses incurred in any *transaction entered into for profit,* though not connected with a trade or business....

I.R.C. § 165 (West Supp.1987) (emphasis added).

**4.** Straddle transactions *entered into after June 23, 1981* are covered by other provisions not at issue in this case. *See* Title V of the Economic Recovery Tax Act of 1981, Pub.L. No. 97–34, 95 Stat. 172, 323, *and* I.R.C. §§ 1092 & 1256 (West

Supp.1987). Nonetheless, the tax treatment of pre-June 24, 1981 straddle transactions is disputed in approximately 4,400 cases docketed in the Tax Court. *See* 130 Cong.Rec. S8390 (daily ed. June 27, 1984). While in 1984 the IRS estimated that these cases represented $500 million in potential revenue, *id.*, more recently it has estimated that they involve approximately $8 billion in revenue. *See* Supplemental Brief for the Appellee–Cross-Appellant at 3.

**5.** The Tenth Circuit has since reversed the Tax Court. *Miller v. Commissioner,* 836 F.2d 1274, 1276 (10th Cir.1988); *see also Boswell v. Commissioner,* 91 T.C. No. 15, 14 (July 26, 1988) [available on WESTLAW, 1988 WL 75868] (holding that Tax Court's *Miller* opinion "will no longer be followed"); *see infra* pp. 645–47.

reasoning that the language of section 108 —"entered into for profit"—is unambiguous because it is identical to the language used in section 165(c)(2). *Id.* at 1280. The Tenth Circuit specifically rejected the Tax Court's "reliance on extrinsic legislative material in interpreting the statute in a way which conflicts with the long-accepted meaning of the words used therein," *id.* at 1279, and concluded that the meaning of the "entered into for profit" language of section 108 is identical to the meaning of the same language in section 165(c)(2).[6] *Id.* at 1280.

After the Tenth Circuit reversed the Tax Court in *Miller*, the Tax Court reexamined its holding in that case in light of both the Tenth Circuit's opinion and Congress' 1986 amendments to section 108.[7] *See Boswell v. Commissioner*, 91 T.C. No. 15 (July 26, 1988). In 1986, Congress retroactively amended section 108 to expressly distinguish between straddle transaction losses incurred in a trade or business and all other straddle transaction losses:

> Section 108 of the Tax Reform Act of 1984 is amended ... by striking out "if such a position is part of a transaction entered into for profit" and inserting in lieu thereof "if such loss is incurred in a trade or business or if such loss is incurred in a transaction entered into for profit though not connected with a trade or business."

Pub.L. No. 99–514, 100 Stat. 2085, 2817–18 (1986). These amendments further harmonize section 108 with section 165(c)(1), which allows the deduction of all straddle losses incurred in a trade or business, and section 165(c)(2), which allows the deduction of such losses in non-trade or business transactions only if entered into for profit. The House Report accompanying the bill amending section 108 explains that its purpose was to dispel any uncertainty created by the Tax Court's decision in *Miller* and to clarify that it had been the intent of Congress in enacting section 108 to adopt the section 165(c)(2) subjective "primarily for profit" standard. The House Report states in pertinent part:

> Section 108 also restated the general rule that losses from the disposition of a position in a straddle are only allowable if such position was part of a transaction entered into for profit. A majority of the Tax Court in *Miller* interpreted section 108 as providing a new, less stringent profit standard for losses incurred with respect to pre–1981 commodity straddles. It was not the intent of Congress in enacting section 108 to change the profit-motive standard of section 165(c)(2) or to enact a new profit-motive standard for commodity straddle activities. This technical correction is necessary to end any additional uncertainty created by the *Miller* case.

H.R.Rep. No. 426, 99th Cong., 1st Sess. 911 (1986). The House–Senate Conference Committee Report provides that the "conference agreement follows the House bill." *See* H.R.Rep. No. 481, 99th Cong., 2d Sess. 845 (1986), 1986 U.S.Code Cong. & Admin. News 4075, 4933.[8] After reviewing the

---

6. Although the Tenth Circuit relied primarily on the text of section 108 itself, it considered the legislative history, *see Miller*, 836 F.2d at 1281–84, and found it equivocal:

> The legislative history in this case cuts both ways. It serves to remind us that substantial reliance on legislative history is more justifiable when a statute is inescapably ambiguous.... Still, having spent this much time with the legislative history, we acknowledge that there is a reasonable inference that the Conference Committee may have intended one test, but Congress enacted another. If that is the case, we are without power to change the words of the statute.... Nor may we elevate the inconsistent language of the Conference Report to the status of law. It would require "unequivocal evidence" of leg-

islative purpose in the history of § 108 to override the plain meaning [of] the words used therein. In the absence of such "unequivocal evidence," we must rely on the words of the statute as generally understood. To do otherwise would be to redraft the statute, something which we are not permitted to do.

*Id.* at 1284–85 (citations omitted).

7. The Tenth Circuit in *Miller* did not consider the 1986 amendments to section 108 in reversing the Tax Court.

8. The legislative history was muddied by a subsequent colloquy on the Senate floor between Senators Dole and Packwood who expressed the view that "the Conference Report did not include the language of the House report that

1986 amendments and this legislative history, the Tax Court in *Boswell* concluded under amended section 108(a) investors in commodity straddle transactions must establish that they entered into straddle transactions primarily for profit in order to deduct related losses. In our opinion, in light of the 1986 amendment to section 108(a), there no longer can be any serious doubt as to the proper profit-motive test ... In light of the retroactive effect of amended section 108(a), our prior opinion in *Miller* will no longer be followed.

91 T.C. No. 15 at 13–14.

## II

With this background, we now consider *Wehrly*, 808 F.2d 1311, in which our court rejected the government's argument that the meaning of the phrase "entered into for profit" is clear because it is identical to the language in section 165(c)(2). *Id.* at 1313–14. Relying specifically on the Tax Court's opinion in *Miller*, the *Wehrly* court found the "entered into for profit" language of

section 108 sufficiently ambiguous to require an examination of the legislative history for "interpretative assistance." *Id.* at 1314. In considering the legislative history, the *Wehrly* court, like the Tax Court in *Miller, see* 84 T.C. at 839, focused on the 1984 Conference Report, 808 F.2d at 1314, and concluded that section 108 "requires the investor to have only a reasonable expectation of a profit. Profit must be a motive but not necessarily the primary motive for entering into a transaction." *Id.* at 1312.[9]

As noted above, since we decided *Wehrly*, the Tenth Circuit has held that section 108 incorporates the subjective "primarily for profit" standard, thus creating a direct conflict with *Wehrly. See Miller*, 836 F.2d at 1285, 1287. The Tenth Circuit explicitly disagreed with the *Wehrly* panel's reading of section 108 as ambiguous in light of "its virtually universal meaning for some forty-six years prior to the advent of [section] 108." *Id.* at 1285.[10] Additionally, since we

---

discussed investors and that the conference report is the entire agreement of the conferees." 132 Cong.Rec. S13956 (daily ed. Sept. 27, 1986). Representative Rostenkowski later refuted this interpretation by claiming that the legislative history included the House Report. All these statements were made after the voting had ended. *See* 132 Cong.Rec. E3391 (daily ed. Oct. 2, 1986). Despite these contradictory statements, on balance the legislative history of the 1986 amendments strongly indicates that Congress intended to clarify that section 108 incorporates the "primarily for profit test." *Accord Boswell*, 91 T.C. No. 15, at 11 n. 8, *and Glass v. Commissioner*, 87 T.C. 1087, 1167–69 (1986) (17–0) (dictum) (1986 amendments revalidated prior cases applying the "primarily for profit" standard to straddle transactions).

9. We note that while *Wehrly* relied on the Tax Court's opinion in *Miller* for the proposition that the "entered into for profit" language of section 108 is sufficiently ambiguous to look to the legislative history, *Wehrly* did not explicitly adopt the Tax Court's "objective test." In fact, it is not clear whether *Wehrly* articulated an objective or a subjective standard, or a hybrid of the two. It is clear, however, that the *Wehrly* court unequivocally rejected the government's position that the section 165(c)(2) subjective "primarily for profit" standard applies in the section 108 context, 808 F.2d at 1315 ("The trial court erred in instructing the jury that for [taxpayers] to qualify for a loss deduction their primary motive must be profit."), and adopted a far less stringent standard.

10. The Tenth Circuit's complete discussion of *Wehrly* is as follows:

We recognize that our decision conflicts with that reached by the Ninth Circuit in *Wehrly v. United States*, 808 F.2d 1311, 1314 (9th Cir.1986). In *Wehrly*, the panel majority determined that the phrase "transaction entered into for profit" was sufficiently ambiguous to require interpretation through the use of legislative history. The panel majority considered the phrase ambiguous because it did not address whether the test was objective or subjective and, if subjective, what the effect of more than a single motive for a transaction might be. Like the tax court in this case, the panel majority viewed the tax court's decisions in *Smith* and *Fox* [*v. Comm.*, 82 T.C. 1001 (1984)] as interpreting the "transaction entered into for profit" requirement of I.R.C. § 165(c)(2). As we have discussed above, we do not agree that the pertinent language is ambiguous given its virtually universal meaning for some forty-six years prior to the advent of § 108. We agree with the reasoning of the dissenting panel member. *Wehrly*, 808 F.2d at 1315–16 (Fletcher, J. dissenting).

*Miller*, 836 F.2d at 1285; *see also Wehrly*, 808 F.2d at 1315 (Fletcher, J., dissenting) ("I cannot agree with the majority's conclusion that in section 108 ... Congress effected a radical change in the meaning of 'transaction entered into for profit.' ").

decided *Wehrly,* the Tax Court in *Boswell* has held that its opinion in *Miller,* upon which *Wehrly* relies, was overruled by the 1986 congressional amendments and will no longer be followed. *See supra* p. 647.

 Although we agree with the Tenth Circuit in *Miller* [11] that the meaning of "entered into for profit" language of section 108 is unambiguous because it is identical to the language of section 165(c)(2) which has been interpreted for over forty years to mean "primarily for profit," we are not normally free to reconsider controlling Ninth Circuit precedent. The government argues, however, that we are not bound by *Wehrly* because the 1986 amendments to section 108 clarify that the statute as enacted in 1984 was intended to incorporate section 165(c)(2)'s subjective "primarily for profit" standard. Taxpayers respond that *Wehrly* is controlling authority because the record in *Wehrly* establishes that the court considered the amendments before denying the government's petition for rehearing. Apparently, the government presented the *Wehrly* court with the 1986 amendments and the legislative history in a memorandum in support of its petition for rehearing, but the court nonetheless denied the petition without comment. Thus, taxpayers suggest that the denial of the petition for rehearing embodies an implicit holding rejecting the government's argument with respect to the amendments and that we are therefore bound to follow *Wehrly* as controlling precedent in this circuit.

We agree with the government that *Wehrly* is not controlling precedent. We believe we are free to reconsider *Wehrly* in light of the 1986 amendments under this circuit's rule that "[w]hen an intervening Supreme Court decision undermines an existing precedent of the Ninth Circuit, and both cases are closely on point, a three judge panel of this court may reexamine our precedent to determine its continuing authority," *United States v. Lancellotti,* 761 F.2d 1363, 1366 (9th Cir.1985); *see also United States v. Howard,* 758 F.2d 1318, 1320 n. 1 (9th Cir.1985) (three-judge panel

free to reexamine Ninth Circuit precedent which has been undermined by intervening en banc decision), for the following reasons. First, we hold that an authority is "intervening" if it post-dates the filing of the original opinion and is not discussed by the court in its order denying the petition for rehearing. *Cf. In re Grand Jury Investigation,* 542 F.2d 166, 173 (3rd Cir. 1976), *cert. denied,* 429 U.S. 1047, 97 S.Ct. 755, 50 L.Ed.2d 762 (1977) (denial of petition for rehearing and suggestion for rehearing en banc does not "imply any judgment on the merits and has no jurisprudential significance."). Thus, even though Congress passed the 1986 amendments before the *Wehrly* court issued its mandate, we hold that the 1986 amendments constitute "intervening" authority for the purposes of our rule. Second, although we have heretofore applied the rule only in cases where intervening Supreme Court or en banc authority has undermined Ninth Circuit precedent, we believe the rule is applicable in cases involving statutory interpretation where Congress has retroactively clarified the meaning of the statute at issue. Finally, we believe that the 1986 amendments have undermined *Wehrly* because they clarify that the "entered into for profit" language in section 108 should be interpreted in the same way as the identical language in section 165(c)(2). Moreover, the legislative history makes it clear that Congress intended to overrule the Tax Court's opinion in *Miller* upon which the *Wehrly* court relied. *See supra* pp. 646–47. We therefore conclude that we are free to reexamine *Wehrly.*

### III

 Having reviewed the 1986 amendments to section 108, we agree with the Tax Court in *Boswell* that Congress intended to overrule the Tax Court in *Miller* and clarify that the "entered into for profit" language in section 108 should be interpreted in the same way as the identical language in section 165(c)(2). 91 T.C. No. 15 at 13–14. We thus conclude, as have both the Tenth Circuit and the Tax Court, that

---

**11.** *See also Wehrly,* 808 F.2d at 1315–16 (Fletch- er, J. dissenting).

section 108 allows taxpayers to deduct losses from straddle transactions only if they can show that their *primary* motive for entering into the transactions was economic profit. *See Miller,* 836 F.2d at 1285, 1287, *and Boswell,* 91 T.C. No. 15 at 13–14. We therefore reverse the Tax Court's decision in this case that because taxpayers "had a reasonable prospect of some profit from the overall transactions," they may deduct losses from the straddle transactions. *See* Clerk's Record 34 at 22.

## IV

 The second question presented by this appeal is whether the taxpayers in this case can deduct, on their 1978 return, legal fees arising out of the sale of a business when capital gain from the sale was recognized in 1978 but the fees were incurred and paid in 1979–82. This issue is settled by the well-established principle that our tax system operates on an annual accounting basis and not on a transactional basis. *See Hillsboro Nat'l Bank v. Commissioner,* 460 U.S. 370, 377–80 & n. 10, 103 S.Ct. 1134, 1139–41 & n. 10, 75 L.Ed.2d 130 (1983); *see also* I.R.C. § 461(a); Reg. 1.461–1(a)(1); *Healy v. Commissioner,* 345 U.S. 278, 284, 73 S.Ct. 671, 675, 97 L.Ed. 1007 (1953). Taxpayers cite no authority for their far-reaching argument that because the 1978 year was under audit we need not apply the annualized accounting system. Furthermore, their argument that the annualized system only applies when the statute of limitations is a bar was specifically rejected in *Hillsboro. See* 460 U.S. at 378 n. 10, 103 S.Ct. at 1140 n. 10. We therefore affirm the Tax Court's ruling that the legal fees are deductible only in the year incurred.

Finally, taxpayers argue that even if legal fees are deductible only in the year incurred, they should nonetheless be entitled to apply the same gross profit percentage they applied to the 1977 payment—77.2%—to the 1978 payment. Although the IRS incorrectly allowed taxpayers to exclude from capital gain in 1977 a percentage based in part on the deduction of legal fees incurred in 1979 and 1980, the IRS is not required to allow taxpayers to exclude the same percentage from capital gain in 1978. The fact that the IRS erroneously allowed a deduction in 1977 does not require it to continue the error for 1978.

The judgment of the Tax Court is AFFIRMED in part, REVERSED in part, and REMANDED for proceedings consistent with this opinion.