ALPINE RIDGE GROUP, a partnership; Monroe Associates, a limited partnership; Brentwood, a limited partnership; Campbell Courts Associates, a partnership; Cheney Gardens Limited Partnership, a limited partnership, et al., Plaintiffs–Appellees,

and

Bitterroot Manor, a limited partnership, et al., Plaintiffs–Intervenors,

v.

Jack F. KEMP, in his official capacity as Secretary of the United States Department of Urban Development; U.S. Department of Housing and Urban Development, Defendants–Appellants.

ALPINE RIDGE GROUP, a partnership; Monroe Associates, a limited partnership; Brentwood, a limited partnership; Campbell Courts Associates, a partnership; Cheney Gardens Limited Partnership, a limited partnership, et al., Plaintiffs–Appellees,

v.

Jack F. KEMP, in his official capacity as Secretary of the United States Department of Urban Development; U.S. Department of Housing and Urban Development, Defendants–Appellants.

ACACIA VILLA; Alicia Park Apartments; Amerige Villa; Antelope Valley, et al., Plaintiffs–Appellees,

v.

Jack KEMP, Sec. HUD, United States of America, Defendants–Appellants.

Nos. 91–35267, 91–35573 and 91–55354.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 11, 1991.

Decided Feb. 7, 1992.

·Douglas Letter, U.S. Dept. of Justice, Washington, D.C., for defendants-appellants.

Warren J. Daheim, Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim, Tacoma, Wash., Henry A. Hubschman, Fried, Frank, Harris, Shriver & Jacobson, Washington, D.C., for plaintiffs-appellees.

Before WALLACE, Chief Judge, HUG and RYMER, Circuit Judges.

## OPINION

WALLACE, Chief Judge:

The Secretary of the Department of Housing and Urban Development (HUD) appeals from decisions of two district courts, 764 F.Supp. 1393, (W.D.Wash.) 774 F.Supp. 1240, (C.D.Cal.) each of which entered a summary or partial summary judgment; one to the Alpine Ridge Group (Alpine) and one to Acacia Villa (Acacia), holding an act of Congress unconstitutional. The district courts had jurisdiction under 28 U.S.C. §§ 1331 and 1361. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291. We affirm.

## I

Alpine and Acacia (owners) are developers and owners of housing projects covered by section 8 of the United States Housing Act of 1937, as amended, 42 U.S.C. § 1437f (Housing Act). Pursuant to the authority granted by Congress in section 8, HUD solicited private developers to submit construction bids for low-income rental housing. HUD or its local designate awarded selected developers Housing Assistance Payment contracts. Under the contracts, the developer/owner collects a portion of the rent from the tenant, based on the tenant's income, while the remainder is paid by the United States as a subsidy. Section 8 also requires HUD to include a provision in the contracts with owners permitting at least annual rent adjustments "to reflect changes in the fair market rentals established in the housing area for similar types and sizes of dwelling units or, if the Secretary determines, on the basis of a reasonable formula." 42 U.S.C. § 1437f(c)(2)(A).

The owners brought suit against HUD claiming entitlement to yearly "formula" rent increases, basing their claim primarily upon the interpretations of section 8(c)(2)(A) of the Housing Act and section 1.9(b) of the contracts adopted in *Rainier View Associates v. United States Department of Housing and Urban Development*, 848 F.2d 988 (9th Cir.1988) *(Rainier View)*, *cert. denied*, 490 U.S. 1066, 109 S.Ct. 2065, 104 L.Ed.2d 630 (1989). *Rainier View* held that HUD elected to use the "reasonable formula," rather than the "fair market value," method for determining annual rent adjustments in section 8 contracts. *Id.* at 991. The formula method obliges the government to calculate and publish Automatic Annual Adjustment Factors (factors), which are then used to adjust contract rents. Our court reasoned that because HUD elected the formula method, it could employ "fair market" comparability studies only to the extent that it incorporated those studies into the factors used to calculate the formula rent adjustments. *Id. Rainier View* rejected HUD's argument that an "Overall Limitation" provision in the contracts permitted HUD to use market rates to cap rent adjustments under the formula method to prevent "material differences between the rents charged for assisted and comparable unas-

sisted units, as determined by the Government...." *Id.* at 990–91.

Despite our decision in *Rainier View,* HUD has continued to adjust rents, not according to the formula method, but on the basis of market comparability studies. HUD has done this in reliance on the Overall Limitation provision and subsequent congressional amendments to section 8 which adopted HUD's interpretation of the Overall Limitation clause. In 1989, Congress enacted section 801 of the Department of Housing and Urban Development Reform Act of 1989, Pub.L. No. 101–235, 103 Stat. 1987, 2057 (HUD Reform Act), ostensibly to change the result in *Rainier View* and settle the dispute between HUD and section 8 owners regarding the method for calculating annual rent adjustments. Section 801 prescribes one new procedure for computing past rent adjustments, and a different procedure for future adjustments. Under these new methods, owners receive a rent increase that is smaller than, but not less than thirty percent of, the rent adjustments they would have been entitled to under the original formula method.

Both district courts held that the HUD Reform Act violated the fifth amendment due process clause by impairing the owners' vested rights to annual rent adjustments pursuant to their section 8 contracts. The cases were consolidated for purposes of appeal.

## II

The constitutionality of a statute is a question of law and, therefore, we review the district courts' rulings de novo. *Trerice v. Pedersen,* 769 F.2d 1398, 1400 (9th Cir.1985). In order to assert a due process claim under the fifth amendment, the owners must first establish that they have cognizable property rights arising out of their contracts with HUD. *Bowen v. Public Agencies Opposed to Social Security Entrapment,* 477 U.S. 41, 54–55, 106 S.Ct. 2390, 2397–98, 91 L.Ed.2d 35 (1986) (*Bowen*); *Peterson v. United States Department of Interior,* 899 F.2d 799, 807 (9th Cir.) (*Peterson*), *cert. denied,* —— U.S. ——, 111 S.Ct. 567, 112 L.Ed.2d 574 (1990).

Relying on *Rainier View,* the district courts held that such property rights had been established.

HUD argues that *Rainier View* was incorrectly decided. It urges us to reconsider the issues decided in *Rainier View* in light of section 801 of the HUD Reform Act and section 142 of Public Law No. 100–242, 101 Stat. 1850 (1988). HUD alleges that through these amendments, Congress retroactively clarified the original meaning of section 8. HUD also points to two lower court decisions as authority contrary to *Rainier View. See Sheridan Square Partnership v. United States,* 761 F.Supp. 738 (D.Colo.1991); *National Leased Housing Association v. United States,* 22 Cl.Ct. 649 (1991).

We have previously held that in certain cases involving statutory interpretation, a three-judge panel may reconsider the decision of an earlier panel when intervening legislation retroactively clarifies the meaning of a statute. *Landreth v. Commissioner,* 859 F.2d 643, 648 (9th Cir.1988) (*Landreth*). There, we held that we were not bound by a prior circuit decision interpreting the IRS Code because a subsequent congressional amendment clarified the meaning of the disputed section. The owners argue that *Landreth* is inapplicable because *Rainier View* was principally a contract, and not a statutory, interpretation case, thereby rendering intervening legislative clarification irrelevant.

Although *Rainier View* discussed the provisions of section 8 in conjunction with its contract analysis, its decision turned on HUD's election in the contracts of the "formula" method for determining rent adjustments. *Rainier View,* 848 F.2d at 990. As a matter of contract law, *Rainier View* held that:

> In the contract, HUD elected the formula method. Having made its choice, HUD cannot now change its mind. The overall limitation provision of the statute and the contract permit HUD to adjust the formula factors in light of market conditions, but it does not permit HUD to abandon entirely the formula method it chose and to adjust rents solely on the

basis of a market survey. HUD's interpretation of the overall limitation provision would render the formula method authorized by the statute and elected in the contract a nullity.

....

We thus hold that the contract unambiguously support [sic] Rainier's interpretation.

*Id.* at 991.

HUD correctly points out that the statute is not wholly irrelevant here because any contract entered into by HUD without congressional authorization would be invalid as *ultra vires. Peterson,* 899 F.2d at 807. Even so, *Rainier View*'s interpretation of the contracts, while not the only approach available to that court, is nevertheless consistent with the language of section 8. Thus, *Peterson* is not an impediment to affirmance. Although HUD disagrees with the interpretation of the contracts set forth in *Rainier View,* this does not disturb the basis for that court's decision, or the consistency of that decision with the underlying statutory language. Because we hold that *Rainier View* was decided as a matter of contract law, we are not free to reexamine the issues in that case under the *Landreth* rule.

HUD contends that if we hold this dispute to be contractual and not statutory for purposes of reexamination under *Landreth,* we lack jurisdiction and must transfer this case to the court of claims. 28 U.S.C. § 1491. We point out that *Rainier View* faced the same question. Because that court decided the case, it must necessarily have determined that jurisdiction was proper. We must follow that decision here.

### III

We next address the question whether the owners' rights to receive formula rent increases for section 8 properties are vested. HUD argues that the "property clauses" of the Constitution do not require the federal government "to adhere to a contract that surrenders an essential attribute of its sovereignty." *United States Trust Co. v. New Jersey,* 431 U.S. 1, 23, 97 S.Ct. 1505, 1518, 52 L.Ed.2d 92 (1977) (*United States Trust*). HUD relies primarily on *Bowen,* 477 U.S. at 52, 106 S.Ct. at 2396–97, for the argument that Congress, as an exercise of its constitutional sovereign powers, can change statutory language underlying a government contract, thereby changing the contract itself. The "sovereign's power to enact subsequent legislation affecting its own contractual arrangements endures, albeit with some limitations, unless 'surrendered in unmistakable terms.'" *Peterson,* 899 F.2d at 808, *quoting Bowen,* 477 U.S. at 52, 106 S.Ct. at 2397.

In *Bowen,* states participating in the federal social security system challenged Congress's retroactive repeal of a statutory provision permitting them to terminate participation in the program unilaterally. The Supreme Court rejected the states' due process argument, holding that the act "created no contractual rights." 477 U.S. at 52, 106 S.Ct. at 2396. The Court stated that the statute did not create any vested rights in light of the fact that Congress expressly reserved the "right to alter, amend, or repeal any provision" of the statute. *Id.* at 51–52, 106 S.Ct. at 2396 (citation and internal quotations omitted).

Here, the owners do not challenge Congress's power to amend the terms of the underlying legislation in the exercise of "public and general acts of a sovereign." *See Horowitz v. United States,* 267 U.S. 458, 461, 45 S.Ct. 344, 344, 69 L.Ed. 736 (1925). Instead, they assert that their contract rights are supported by independent consideration and are therefore vested under the Supreme Court's decisions in *Lynch v. United States,* 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434 (1934) (*Lynch*), and *Perry v. United States,* 294 U.S. 330, 55 S.Ct. 432, 79 L.Ed. 912 (1935) (*Perry*).

*Lynch* involved Congress's attempt to withdraw from its obligation to make payments on insurance contracts in order to save money during the Great Depression of the 1930s. The Court held that the payment of premiums by the beneficiaries created vested property rights. 292 U.S. at 576–77, 54 S.Ct. at 842–43. It stated that

"Congress was free to reduce gratuities deemed excessive," but "was without power to reduce expenditures by abrogating contractual obligations of the United States." *Id.* at 580, 54 S.Ct. at 844. In *Perry*, 294 U.S. at 353–54, 55 S.Ct. at 436–37, a case involving bond debt, the Court likewise held that "Congress has not been vested with authority to alter or destroy those obligations."

HUD contends that the instant appeals are more akin to cases rejecting due process attacks on retroactive "curative" legislation. *See Wiggins v. IRS*, 904 F.2d 311, 316–17 (5th Cir.1990); *Opdyke Investment Co. v. City of Detroit*, 883 F.2d 1265, 1274–76 (6th Cir.1989); *Temple University v. United States*, 769 F.2d 126, 134–35 (3d Cir.1985), *cert. denied*, 476 U.S. 1182, 106 S.Ct. 2914, 91 L.Ed.2d 544 (1986); *Long v. IRS*, 742 F.2d 1173, 1183–84 (9th Cir.1984). HUD argues that curative legislation by its very nature affects a "property" interest because it eliminates an otherwise accrued claim against the government. Thus, HUD likens this "property" interest to the contract rights asserted by the owners.

Although HUD is correct that a claim may constitute a property right, *see In re Consolidated United States Atmospheric Testing Litigation*, 820 F.2d 982, 989 (9th Cir.1987), *cert. denied*, 485 U.S. 905, 108 S.Ct. 1076, 99 L.Ed.2d 235 (1988), its argument is not persuasive because it fails to focus on the source of the right affected by the legislation. If the asserted right is a benefit gratuitously conferred by statute, as in *Bowen*, the repeal or amendment of that statute is not subject to a substantive due process challenge. The owners here, however, have bargained-for *contract* rights, supported by independent consideration. Although these rights were created because a statute authorized HUD to enter into contracts with private developers, this fact does not detract from the fundamentally contractual nature of those rights. We question whether it is within the purview of Congress's power to engage in contract interpretation. It certainly is the duty of the judiciary, a duty that was exercised in *Rainier View*. Thus, section 801

is not "curative" in the sense urged by HUD.

HUD also argues that *Peterson* and *FHA v. The Darlington, Inc.*, 358 U.S. 84, 79 S.Ct. 141, 3 L.Ed.2d 132 (1958), are examples of curative legislation impacting bargained-for contract rights. In *Peterson*, water districts challenged a clause in the Reclamation Reform Act of 1982 requiring the districts to make higher payments for water that was resold for irrigation use on leased lands. The water districts argued that the amendment constituted an impairment of their contracts with the government. *Peterson*, 899 F.2d at 807. We held that the water districts had no implied contractual right to buy cheap water for leased lands, and that the Reclamation Reform Act did not deprive them of due process. *Id.* at 809–10.

Similarly in *The Darlington*, 358 U.S. at 87, 90–91, 79 S.Ct. at 144, 145–46, the Supreme Court held that due process was not violated when Congress amended section 608 of the National Housing Act (NHA). The amendment stated that the NHA originally intended to preclude owners from renting to transients if the owners were receiving federally subsidized mortgage insurance. *Id.* at 86, 79 S.Ct. at 143–44. The Court held that the *implied* contractual right asserted by the plaintiffs had not been established, and that the *original* intent of the NHA was, in fact, to exclude transients. *Id.* at 90, 79 S.Ct. at 145–46.

These cases are distinguishable as instances where courts declined to interpret contracts as containing implied provisions foreclosing the exercise of sovereign power by the government. Neither the claim in *Peterson* nor in *The Darlington* was based on an explicit contractual provision. In contrast, *Rainier View* held that HUD *explicitly* limited its statutory options by choosing the formula methodology for adjusting rents and bound itself to that choice in the contracts with the owners. Thus, the district courts did not err in holding that the owners had acquired vested property rights.

## IV

For the reasons stated above, we conclude, in accord with *Rainier View*, that the owners have a vested property interest in formula-based rent adjustments pursuant to their section 8 contracts. The obligation of the United States to make payments on these interests is unambiguously stated in section 1.6 of the contracts themselves. HUD does not dispute that section 801 substantially impairs the owners' exercise of these property rights. Thus, the remaining question is whether Congress's abrogation of the owners' rights by section 801 of the HUD Reform Act violates due process.

HUD argues that Congress may legislate retroactively in ways that affect private property rights as long as a rational basis for the legislation exists. *United States v. Sperry Corp.*, 493 U.S. 52, 65, 110 S.Ct. 387, 396–97, 107 L.Ed.2d 290 (1989). The owners contend that section 801 is subject to heightened scrutiny. Under the contract clause analysis applicable to the states, courts have applied the standard of "reasonable and necessary to serve an important public purpose" in reviewing state modifications of its own obligations. *United States Trust*, 431 U.S. at 25, 97 S.Ct. at 1519. The contract clause does not apply to the federal government, *see Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 732 n. 9, 104 S.Ct. 2709, 2719 n. 9, 81 L.Ed.2d 601 (1984), and we have not previously decided whether a like standard applies to Congress under the fifth amendment. The Supreme Court, however, has stated in dicta that a "dual standard of review" applies under the due process clause, with heightened scrutiny of the federal government's impairment of its own obligations. *United States Trust*, 431 U.S. at 26 n. 25, 97 S.Ct. at 1519 n. 25.

Neither district court resolved this issue because both courts held that Congress abrogated vested contract rights solely to save money. In *Lynch*, 292 U.S. at 580, 54 S.Ct. at 844, the Supreme Court ruled that "Congress was without power to reduce expenditures by abrogating contractual obligations of the United States." The Court subsequently reaffirmed this principle, stating that "Congress does not have the power to repudiate its own debts ... simply in order to save money." *Bowen*, 477 U.S. at 55, 106 S.Ct. at 2398; *see also United States Trust*, 431 U.S. at 26 n. 25, 97 S.Ct. at 1519 n. 25; *Peterson*, 899 F.2d at 808 n. 16, 813 n. 20. We do not need to decide whether a heightened standard applies to the federal government's impairment of its own obligations if Congress unconstitutionally abrogated the owners' vested rights in order to save money.

HUD concedes that the government may not alter contracts simply to save money, but contends that these appeals are distinguishable from *Lynch* and *Perry*. It argues that the government acknowledged the validity of the debt in *Lynch* and *Perry*, whereas here, Congress enacted section 801 to clarify that no debt obligation exists at all. We have already rejected this argument, however, in ruling that *Rainier View* established a vested property right. This is not a case where Congress alters the effect of a court decision by amending a statute. Through section 801, Congress has attempted to change section 8's original meaning retroactively, 14 years after its enactment. The fact that Congress does not recognize its obligation under the contracts as interpreted by *Rainier View* does not affect the validity of the owners' rights, or Congress's inability to alter them by retroactively amending the underlying statute.

HUD also denies that Congress acted solely to save money. It argues that section 801 was enacted as a compromise to end litigation over the issue of the appropriate method for determining annual section 8 rent adjustments. HUD points to no authority permitting Congress to legislate a compromise to disputes involving vested property rights in order to prevent costly or wasteful litigation. HUD's argument again assumes the absence of any vested property right in annual formula rent adjustments, an issue that we have decided against it.

HUD is unable to present any argument explaining section 801 as anything other

than Congress's attempt to save resources and money by legislating a compromise to its disputes with the owners. We hold that these cases fall within the scope of *Lynch* and *Perry,* and that through section 801, Congress has attempted to reduce an obligation in order to save money. Although HUD and Congress do not recognize this obligation, it has been established by the final judgment in *Rainier View.* Therefore, we hold that section 801 unconstitutionally abrogates the owners' vested property rights in violation of the fifth amendment.

AFFIRMED.