John E. KEANE, Dorothy M. Keane, et al., Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

Nos. 87–7380, 87–7450, 88–7035, 88–7037, 88–7127, 88–7179 and 88–7251.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 16, 1988.

Decided Jan. 13, 1989.

Martin M. Ruken, Chicago, Ill., for petitioners/appellants.

Kenneth L. Greene, Dept. of Justice, Washington, D.C., for respondent/appellee.

Before PREGERSON, CANBY, Jr. and BEEZER, Circuit Judges.

PREGERSON, Circuit Judge:

Appellants seek reversal of the Tax Court's decision in consolidated proceedings *sub. nom. Glass v. Commissioner,* 87 T.C. 1087 (1986). In those cases, the Tax Court rejected appellants' challenge to the Commissioner's disallowance of losses claimed by appellants on their federal income tax returns for the years 1975 through 1980. The appellants allegedly incurred net losses from closing transactions in connection with "London option transactions" (commodity option and forward trading on the London Metal Exchange).[1] The Tax Court held that the losses were not deductible under I.R.C. sections 165(a) and 165(c)(2), or section 108 of the Tax Reform Act of 1984, as amended retroactively by section 1808 of the Tax Reform Act of 1986, Pub.L. No. 99–514, 100 Stat. 2085 ("section 108"), because the London option transactions lacked "economic substance" and therefore were not the type of transaction to which the loss provisions of the

1. For a comprehensive description of the mechanics of the London option transactions, see *Glass v. Commissioner,* 87 T.C. 1087 (1986). For a technical explanation of straddle transactions, see *Miller v. Commissioner,* 836 F.2d 1274, 1276 (10th Cir.1988).

Internal Revenue Code ("the Code") applied.

Appellants argue, first, that the London option transactions did have economic substance aside from generating tax benefits for appellants, and that the Code's loss provisions, in particular section 108, therefore apply to the transactions at issue. They further argue that, because tax treatment of the losses allegedly sustained in the London option transactions is governed by section 108, the case must be remanded so that the Tax Court may apply the proper legal standard in determining whether the transactions were "entered into for profit" as required by that section.

Because we conclude that the Tax Court's determination that the transactions at issue lacked economic substance was correct, we affirm its decision.

### STANDARD OF REVIEW

The Tax Court's ruling that the London option transactions engaged in by appellants lacked economic substance is a finding of fact that we review under the clearly erroneous standard. *Sochin v. Commissioner*, 843 F.2d 351, 353 (9th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 72, 102 L.Ed.2d 49 (1988).

### BACKGROUND

The typical London option transaction involved a planned two-year series of trades in options and forward contracts. The transaction employed either an option straddle or an option hedge strategy.[2] Both strategies were designed to create realized ordinary loss in year one, and capital gain in year two. *See Glass*, 87 T.C. at 1104, 1106. The gain incurred in year two would be approximately equal to the loss incurred in year one. *Id.* at 1105–06.[3]

Based on the London option transactions, each appellant claimed an ordinary net loss deduction on his federal income tax return

which he used to offset unrelated ordinary income. The Commissioner, however, determined that the losses produced in the first year of the transaction were not deductible. The Commissioner accordingly asserted deficiencies against appellants. Appellants filed petitions for redetermination in the Tax Court and their cases were consolidated with those of 1,400 other petitioners.

The Tax Court held that the London option transactions lacked economic substance and therefore must be disregarded for federal income tax purposes. *Glass*, 87 T.C. at 1177. After analyzing the entire two-year tax straddle scheme in detail, the court concluded that the transactions were "intentional[ly] skew[ed] ... to realize year one losses." *Id.* at 1174. The structuring of the transactions, moreover, "prohibitively stack[ed] the deck against the chances of significant financial success." *Id.* at 1174. The court explained:

> The intentionally realized losses in year one were not necessary or helpful in profiting from difference gains in petitioners' commodity straddle transactions. Put in this light, the London options strategy was "a mere device which put on the form of [commodity option and futures transactions] as a disguise for concealing its real character," the obtaining of unallowable loss deductions. As such, the London options transaction lacked economic substance and was a sham.

*Id.* at 1176 (citing *Gregory v. Helvering*, 293 U.S. 465, 469, 55 S.Ct. 266, 267, 79 L.Ed. 596 (1935)). The court therefore held that section 108 was "not available to permit loss deductions in the first year of commodity straddle transactions where, as here, the ... transactions hav[e] no business or profit making function apart from obtaining tax deductions." *Id.*

These appeals followed.[4]

2. Both the option straddle transaction and the option hedge transaction involved the use of multiple offsetting positions combining options and futures contracts. *Glass*, 87 T.C. at 1156.

3. Appellants assert that the gain incurred in year two "more than offset[ ]" the loss of year

one. However, the Tax Court's findings of fact belie this assertion. 87 T.C. at 1104–06.

4. Appeals from decisions entered pursuant to the Tax Court's opinion in these cases were also brought in the First, Second, Fourth, Fifth,

## DISCUSSION

Appellants contend that the Tax Court's holding was not supported by the factual findings set out in the court's opinion. They argue that the transactions at issue had economic substance justifying loss deductions under the Code. They further contend that the Tax Court applied an incorrect legal standard when determining the applicability of section 108 to the London options transactions.

### I. The Tax Court's Findings

■ Findings of fact are sufficient if they provide the appellate court with an understanding of the basis of the trial court's decision and the grounds upon which the trial court reached that decision. *Sochin v. Commissioner,* 843 F.2d 351, 354 (9th Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 72, 102 L.Ed.2d 49 (1988).

Appellants argue that the evidence showed that there was profit potential in the London option transactions. They point out that gains may be generated in straddle trading by changes in the price or spread differentials between the separate straddle legs. They further argue that the Tax Court erroneously held that the transactions at issue lacked economic substance solely because losses were intentionally taken in the first year.

■ These arguments are not persuasive. First, while it is undisputed that, as a theoretical matter, either the option straddle or option hedge strategy could result in economic gains, *see, e.g.,* 87 T.C. at 1102, 1102–03, 1173 n. 133, the Tax Court specifically found that the transactions entered into by appellants were executed in such a manner as to insure that the net result of the transactions would be tax

deductible losses. 87 T.C. at 1174–76. The Tax Court examined the entire series of transactions from the opening to the closing of representative trading accounts. *Id.* at 1173 n. 135. Based on this examination, the court concluded: "There can be no real dispute that the tax centerpiece of the London options transaction was the closing of the sold option in year one with an ordinary loss objective and the moving of the offsetting capital gain to a subsequent year. The London option trades were consciously effected with this in mind." *Id.* at 1174. The Tax Court's factual characterization of the London option transactions is not clearly erroneous.[5]

Appellants also contend that the Tax Court "held, as a matter of law, that because the taxpayers intentionally closed their written options at a loss during the first year of their straddle trading, their 'London Options Transaction lacked economic substance and was a sham.'" Yet the Tax Court's holding was *not* based merely on the fact that appellants intentionally sustained losses in the first year of the overall transaction. Rather, the court based its holding on an analysis of appellants' "entire tax straddle scheme," noting that "[i]t is the overall scheme which taints the deductibility of the year one losses." 87 T.C. at 1174. Thus the Tax Court correctly considered the entire two-year sequence of transactions when it determined that the London option transactions lacked economic substance and were designed merely to create deductible losses.

Finally, appellants argue that because the Tax Court did not challenge the existence of the trades constituting the London option transactions, its conclusion that the transactions lacked economic substance is clearly erroneous. This contention lacks

---

Sixth, Seventh, Eighth, Tenth, and Eleventh Circuits.

**5.** Appellants contend that the Tax Court erroneously relied in its opinion on promotional materials issued by certain of the brokers who executed the transactions. The Tax Court described these materials at length in its opinion, and they support its finding that the trades were "consciously effected" with the object of obtaining tax deductions (rather than economic gain)

in mind. 87 T.C. at 1110–11, 1120–26, 1134–36, 1146–50, 1159. Appellants argue that the parties "stipulated that 13 of the 1100 petitioners in this case" received promotional materials. In fact, however, the parties stipulated only that 13 exhibits were *examples* of promotional materials; the parties did not stipulate that only 13 of the petitioners had received promotional materials. We find that the Tax Court's use of the promotional materials was proper.

merit. Even assuming the existence of the relevant trades,[6] the fact that the trades took place does not demonstrate that the overall structure of the London option transactions was designed to produce, or could produce, real economic gains. We hold that the evidence before the Tax Court fully supported its conclusion that the transactions lacked economic substance. The Tax Court's findings are " 'sufficient to indicate the factual basis for its ultimate conclusions.' " *Sochin,* 843 F.2d at 355 (quoting *Vance v. American Hawaii Cruises, Inc.,* 789 F.2d 790, 792 (9th Cir. 1986)). *Accord Yosha v. Commissioner,* 861 F.2d 494, at 498–99 (7th Cir.1988) (affirming *Glass v. Commissioner*) (Tax Court did not commit clear error in holding that the London option transactions lacked economic substance).

## II. The Tax Court's Legal Standard

The Tax Court held that section 108(a)[7] did not provide a deduction for the losses appellants sustained in their London option transactions. Under section 108(a), losses may be deducted if the transactions in which they were incurred were "entered into for profit." The Tax Court held that "section 108 is . . . not available to permit loss deductions in the first year of commodity straddle transactions when, as here, the . . . transactions hav[e] no business or profit-making function apart from obtaining tax deductions." 87 T.C. at 1176.

Appellants contend that the Tax Court applied the wrong legal standard in reaching its conclusion that section 108(a) did not apply. They argue that the court erred in determining that the London option transactions had not been "entered into for profit" for purposes of section 108(a).

Appellants' reliance on section 108 is misplaced. This court has recognized on several occasions that Congress never intended the loss deduction provisions of the Code to apply to transactions having no economic effect other than the creation of tax deductible losses. In *Sochin v. Commissioner,* 843 F.2d at 353 n. 6, we observed that the profit motive test of section 108 "is not applied until the court determines that the transaction is itself bona fide. . . ."[8] Because the Tax Court in that case determined that the taxpayers had "failed to establish that the entire [investment] program . . . did not exist solely to provide tax benefits for its investors," *id.* at 354 (quoting *Brown v. Commissioner,* 85 T.C. 968, 988 (1985)), we approved the court's decision that section 108 did not apply. *Id.* at 353 n. 6.

Thus the Tax Court in the present case correctly held that the first year losses were not deductible under section 108 because the transactions at issue were designed and executed so as to have no economic effect other than the generation of tax benefits. *Accord Yosha,* 861 F.2d at 499 (London option transactions had "no nontax profit motive"); *id.* at 499 (London

6. The Tax Court "assume[d], without deciding, that the commodity options and futures contracts which petitioners entered into were actual contracts." 87 T.C. at 1172. The court did not, therefore, focus its inquiry on "whether petitioners have sufficiently authenticated their transactions (i.e., proved that there *were* actual transactions);" rather, the court focused on "whether such transactions, even if actually proven, are . . . sufficient to accomplish the tax results which petitioners contemplated." *Id.*

7. Section 108(a) was enacted as part of the Tax Reform Act of 1984, and was amended by the Tax Reform Act of 1986. This section governs the deductibility of pre–1982 losses from commodity straddles. It allows the deduction of a loss incurred on the disposition of a position in a straddle if such loss is incurred in a trade or business or in a transaction entered into for profit though not connected with a trade or

business. Appellants argue that the latter situation, in which a loss is incurred not in connection with a trade or business, exists in this case.

8. At the time *Sochin* was decided, this circuit interpreted section 108's "entered into for profit" language to require only that the investor have a "reasonable expectation of profit." *Sochin,* 843 F.2d at 353 n. 6 (citing *Wehrly v. United States,* 808 F.2d 1311, 1314 (9th Cir. 1986)). However, the test currently mandated in this circuit restricts loss deductions under section 108 to transactions entered into with the "primary motive" of obtaining an economic profit. *Landreth v. Commissioner,* 859 F.2d 643, at 648–49 (9th Cir.1988). This change in the interpretation of the profit motive test of section 108 does not, however, affect the rule that section 108 provides loss deductions only for bona fide transactions having economic substance.

option transactions were so configured as to deny taxpayers any prospect of profit). Because the transactions lacked economic substance, section 108 did not apply.

AFFIRMED.