Edward E. LEE, Jr. and Betty J. Lee, Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellee.

Gerard J. SCHMIDT and Mary A. Schmidt, Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellee.

Nos. 87–2161, 88–1502.

United States Court of Appeals, Eighth Circuit.

Submitted Aug. 8, 1989.

Decided Aug. 29, 1989.

---

Martin M. Rukin, Chicago, Ill., for appellants.

Gary R. Allen, Washington, D.C., for appellee.

Before LAY, Chief Judge, JOHN R. GIBSON, Circuit Judge, and STUART,* Senior District Judge.

LAY, Chief Judge.

These appeals arise from a decision of the tax court in consolidated proceedings *sub nom. Glass v. Commissioner*, 87 T.C. 1087 (1986). Jurisdiction in this court is based on 26 U.S.C. § 7482(a). In *Glass*, the tax court held that petitioners Edward and Betty Lee and Gerard and Mary Schmidt (taxpayers) wrongfully deducted ordinary losses under I.R.C. § 165(c)(2). The tax court further held that the transactions giving rise to these losses were without economic substance and, as such, were substantive shams. *See Gregory v. Helvering*, 293 U.S. 465, 469–70, 55 S.Ct. 266, 267–68, 79 L.Ed. 596 (1935). Judgments assessing deficiencies in the amounts of $22,457, and $28,414, respectively, were entered against the taxpayers. We affirm the judgment of the tax court.

These appeals arise out of the so-called "London options" case which commenced in 1983. The petitioners, at one time numbering over 1,400 and including these taxpayers, claimed deductible losses from commodity straddle transactions in excess of $100 million on their respective tax returns for the years 1975 through 1980.

The tax court has set out in detail the factual background of the option straddle trading strategy employed by taxpayers. *Glass*, 87 T.C. at 1095–1153. We will not recount that background here. Suffice it to say, in finding against the taxpayers the tax court held:

> There can be no real dispute that the tax centerpiece of the London options transaction was the closing of the sold option in year one with an ordinary loss objective and the moving of the offsetting capital gain to a subsequent year. The London option trades were consciously effected with this in mind. * * * It follows logically, then, that the intentional skewing of the transactions to realize year one losses introduces an additional negative element which prohibitively stacks the deck against the chances of significant financial success.
>
> Petitioners argue that under the London options transaction there was a reasonable prospect for profit. This argument conveniently overlooks the fact that in the critical year—the loss year—there was *no* prospect for *any* profit, for any other result would have destroyed the raison d'etre for entering into the London options transaction in the first place.

*Id.* at 1174 (emphasis in original).

Numerous petitioners from the consolidated *Glass* proceedings have challenged this finding in various circuit courts around the nation. We note that, to date, all of the circuits to consider this matter have affirmed the tax court's holding in *Glass*. *See Dewees v. Commissioner*, 870 F.2d 21, 32 (1st Cir.1989) ("*[N]one* of the [1,400] London options investors' trading records shows any evidence of the real risks, prof-

---

* The HONORABLE WILLIAM C. STUART, Senior United States District Judge for the Southern District of Iowa, sitting by designation.

its, and losses that genuine contango speculation would create. And the odds against the trades of [1,400] genuine speculators, seeking real profits, just happening * * * to lose exactly the amount of their margin deposits, must be phenomenal. It might not be reasonable to think a coin was unbalanced because it lands 'heads' once, but that conclusion becomes far more reasonable when 'heads' turns up [1,400] times in a row.") (emphasis in original); *Friedman v. Commissioner*, 869 F.2d 785, 793–95 (4th Cir.1989) ("Every petitioner before the court in *Glass,* including the taxpayers herein, no matter when the trades were opened, no matter when the closing trades took place, no matter what commodities were traded, received, as a result of closing sold options, an ordinary loss in the first year. * * * Given these intentionally incurred losses * * * we must uphold the *Glass* court's finding."); *Killingsworth v. Commissioner*, 864 F.2d 1214, 1219 (5th Cir.1989) ("[T]he whole scheme smacks of tax avoidance and the taxpayers fare no better under the objective test than they do under the subjective test."); *Ratliff v. Commissioner*, 865 F.2d 97, 98 (6th Cir. 1989) ("Reduced * * * to the bare essentials, what transpired is that for a fee, brokers in London sold tax advantages to high-bracket taxpayers. The 'investors' did not receive any profits from their transactions, or sustain any actual losses beyond their initial 'margin deposits.' "); *Keats v. United States*, 865 F.2d 86 (6th Cir.1988) (upheld district court's grant of summary judgment to Commissioner); *Yosha v. Commissioner*, 861 F.2d 494, 499–501 (7th Cir.1988) ("The transactions in this case were * * * devices whose only possible or contemplated effect was to avoid taxes and *a fortiori* they were not engaged in for profit within the meaning of section 165(c)(2). * * * The lack of substance lies in the fact that the investor had zero prospect of gain or loss. The brokers were selling tax losses."); *Keane v. Commissioner*, 865 F.2d 1088, 1092 (9th Cir.1989) ("[T]he Tax Court * * * correctly held that the first year losses were not deductible under section 108 because the transactions at issue were designed and executed so as

to have no economic effect other than the generation of tax benefits."); *Kirchman v. Commissioner*, 862 F.2d 1486, 1493 (11th Cir.1989) ("We hold that where, as here, the only substance of a transaction is the creation of income tax benefits for a fee, however the taxpayer characterizes that fee, the transaction is a sham for income tax purposes.").

We adhere to the unanimous holdings of our sister circuits. We hold that the tax court did not err in its findings of fact or in its conclusion that these straddle options were substantive shams. The London option transactions were designed, promoted, and executed for the sole purpose of tax avoidance. The transactions lacked economic substance. As such, they are outside the purview of §§ 165(c)(2) and 108 of the Internal Revenue Code.

The judgment of the tax court assessing deficiencies against the taxpayers is affirmed.