**David COOK, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 89–70136.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 18, 1990.

Memorandum April 22, 1991.

Order and Opinion Aug. 12, 1991.

Certiorari Denied Oct. 7, 1991.

See 112 S.Ct. 172.

Eric R. Fox, Ivins, Phillips & Barker, Washington, D.C., for petitioner.

Kenneth L. Greene, Tax Div., U.S. Dept. of Justice, Washington, D.C., for respondent.

Before BEEZER and KOZINSKI, Circuit Judges, and KLEINFELD [1], District Judge.

ORDER

The memorandum disposition filed April 22, 1991, 931 F.2d 59, (9th Cir.) is, as re-

**1.** The Honorable Andrew J. Kleinfeld, United States District Judge, District of Alaska, sitting by designation.

vised, redesignated as an authored opinion by Judge Kleinfeld.

## OPINION

KLEINFELD, District Judge:

■ The central issue in this appeal is whether a commodities dealer could deduct losses on the first leg of a pre–1982 straddle, where the straddle was an economic but not a factual sham. We have previously decided that persons other than commodities dealers could not take a deduction in similar circumstances. The statute includes a special provision for commodities dealers, which the taxpayer would construe to allow recognition of these losses. We conclude that the sham losses are not deductible, and affirm the decision below, *Cook v. Commissioner*, 90 T.C. 975 (1988). The Second Circuit reached the same conclusion in *DeMartino v. Commissioner*, 862 F.2d 400 (2d Cir.1988).

### Facts

The parties stipulated to all material facts. Cook was a commodities dealer when he entered into commodities straddles on the London metals exchange in 1976 and 1977. These straddles were economic shams but not factual shams. This means that they were not intended to generate a trading profit, but the options really were bought and sold.

A straddle is a purchase, at one time, of options to buy and to sell the same commodity. The two options are called positions, or legs, of the straddle. As the price of the commodity changes, one leg will become more valuable, and the other less. Profit can be made when one leg gains more value than is lost on the other leg. Such a spread may occur because the legs are for purchase and sale at different times, or because the legs are closed out at different times.

In the tax avoidance strategy used in this case, the loss leg would be sold before the end of the tax year, but the gain leg would be held until after the capital gains period had elapsed the next year. Trades would be timed to accomplish this tax objective,

not to make a trading profit. The mechanics of this kind of straddle are explained in *Dewees v. Commissioner*, 870 F.2d 21, 23–24 (1st Cir.1989), and *Glass v. Commissioner*, 87 T.C. 1087, 1107–1117 (1986). The Tax Court found that the straddles in the case at bar were designed to delay income tax obligations by one year, and to convert ordinary income into capital gains.

Cook's broker, Competex, gave an example in its promotional literature of trades designed to use a $12,000 investment to generate a $100,000 first year short term loss, followed by an $88,000 long term capital gain in the second year. This would produce a net tax saving of $28,000 for the 50% bracket taxpayer. The investor's entire $12,000 would be absorbed for premiums and commissions, so he would get no money back, only paper, but his economic advantage from tax savings would still be a net of $16,000. *See Glass v. Commissioner*, 87 T.C. 1087, 1110 (1986).

### Cook's statutory argument

Cook argues that a 1986 statutory change allows him to deduct the losses in the first year of these transactions, despite the lack of economic substance. The argument rests upon the changes made in section 108 of the Deficit Reduction Act of 1984 by the Tax Reform Act of 1986.

Section 108 of the Deficit Reduction Act of 1984 applies specifically to pre–1982 straddles. Before the 1986 change, subsection (a) said that "in the case of any disposition" of a pre–1982 position, "any loss from such disposition shall be allowed for the taxable year of the disposition if such position is part of a transaction entered into for profit." Deficit Reduction Act of 1984, Pub.L. 98–369, § 108(a) 98 Stat. 494, 630 (1984). This provision allowed the loss to be taken when the first leg was sold, even though the first leg was part of a straddle transaction which would not be fully closed out until the other leg was sold. The critical qualification in this provision was the phrase, "if such position is part of a transaction entered into for profit." This language plainly excluded trans-

actions lacking economic substance from the benefit of subsection (a).

Subsection (b) of the 1984 Act said that "for purposes of subsection (a), any position held by a commodities dealer ... shall be rebuttably presumed to be part of a transaction entered into for profit." This provision created a presumption in favor of a commodities dealer, but since the presumption was rebuttable, the "for profit" qualification in the statute still applied to a dealer. Cook makes no claim to a deduction for the loss leg under the statute as it stood in 1984.

Cook's theory arises out of changes in section 108 made by the Tax Reform Act of 1986, Pub.L. 99–514, § 1808(d), 100 Stat. 2085, 2817, § 1808(d) (1986). The 1986 Act struck the language in subsection (a), "if such position is part of a transaction entered into for profit." It substituted "if such loss is incurred in a trade or business, *or* if such loss is incurred in a transaction entered into for profit though not connected with a trade or business." *Id.*, § 1808(d)(1) (emphasis added).

Subsection (b) was also amended. The new provision eliminated the "rebuttably presumed" language for commodities dealers, and provided instead that "[f]or purposes of subsection (a), any loss incurred by a commodities dealer in the trading of commodities shall be treated as a loss incurred in a trade or business." The changes were retroactive.

Cook argues that these changes mean that a commodities dealer's loss need no longer be part of a "transaction entered into for profit." He argues that (1) a commodities dealer's disposition of the loss leg must be treated as incurred in a trade or business, and (2) the "for profit" requirement does not apply to a disposition incurred in a trade or business, so (3) a commodities dealer's loss on a disposition must be recognized, even though not part of a transaction entered into for profit.

The relevant portion of section 108 of the 1984 Act, as amended by section 1808 of the 1986 Act, reads:

(a) GENERAL RULE.—For purposes of the Internal Revenue Code of 1986 [formerly I.R.C.1954], in the case of any disposition of 1 or more positions—

(1) which were entered into before 1982 and form part of a straddle, and

(2) to which the amendments made by title V of the Economic Recovery Tax Act of 1981 ... do not apply,

any loss from such disposition shall be allowed for the taxable year of the disposition if such loss is incurred in a trade or business, or if such loss is incurred in a transaction entered into for profit though not connected with a trade or business.

(b) LOSS INCURRED IN A TRADE OR BUSINESS.—For purposes of subsection (a), any loss incurred by a commodities dealer in the trading of commodities shall be treated as a loss incurred in a trade or business.

26 U.S.C. § 1092 note (1988).

Cook argues that without his construction, the "trade or business" branch of subsection (a) would be a nullity, because any disposition by a commodities dealer other than an economic sham transaction would be covered by the "for profit" branch.

### Analysis

The statute has two branches, one for losses incurred in a trade or business, and the other for transactions entered into for profit. We have previously construed the for profit branch of the statute, but not the trade or business branch. Despite the distinction, our previous decision compels our result under the trade or business branch.

In *Keane v. Commissioner of Internal Revenue*, 865 F.2d 1088 (9th Cir. 1989), we held that the profit motive test is not applied until the court determines that the transaction is itself a bona fide, not a sham. *See Id.* at 1092, quoting *Sochin v. Commissioner*, 843 F.2d 351, 354, n. 6 (9th Cir.1988). We found that the Tax Court "correctly considered the entire two-year sequence of transactions when it determined that the London option transactions lacked economic substance and were designed merely to create a deductible losses." *Keane* at 1091. This analysis means

that if the entire straddle is an economic sham, then there is no loss to recognize, so it does not matter whether the sham loss is incurred in a trade or business or not.

Our decision in *Keane* was an affirmance of *Glass v. Commissioner*, 87 T.C. 1087 (1986).[2] *Glass* involved customers for these London metals exchange tax shelters who were not commodities dealers. The Tax Court held that "the relevant transaction was petitioners' entire commodity tax straddle scheme." *Id.* at 1163. The Tax Court noted the parallel between the revised language on straddles and the general provision on deductibility of losses:

> The amended section 108(a) expressly distinguishes between a loss incurred by a commodities dealer in the trade or business of trading commodities and a loss incurred in a commodities transaction entered into for profit though not connected with a trade or business. Thus, the language of section 108(a) is now completely harmonized with that of section 165(c)(1), which allows losses incurred in a trade or business, and section 165(c)(2), which allows losses incurred in any transaction entered into for profit, though not connected with a trade or business.

*Glass* at 1166. We find the Tax Court's reasoning persuasive.

In *Cook v. Commissioner*, 90 T.C. 975 (1988), the Tax Court held that even though a commodities dealer did not need to satisfy the "for profit" requirement under the 1986 Act, he still needed a "loss" *Id.* at 986. A concurring opinion in *Cook* reasoned that, where the transaction was an economic but not a factual sham, losses had to be recognized for one year, to give meaning to the commodities dealer branch of section 108. The concurring opinion would have held that the provision applied only to trades on domestic exchanges, not to trades on unregulated foreign exchanges. *Id.* at 989–993.

Cook argues, along the lines of this concurring opinion, that disallowance of economic sham losses for commodities dealers makes a nullity of the trade or business branch of section 108. This argument challenges us to imagine a transaction by a commodities dealer which generates a recognizable loss, yet the loss is not incurred in a transaction entered into for profit.

There may be such losses. A commodities dealer might, for example, "lay off" trades with customers, by setting off a buy on the market against a sale to a customer, and vice versa, to avoid market risk to himself. *See Dewees v. Commissioner*, 870 F.2d 21, 23–24 (1st Cir.1989). The intended profit for the dealer might be from commissions or other aspects of business as a commodities dealer, rather than from the particular trades.

We need not reach the question of recognition of losses on such transactions, because our analysis does not depend on whether such transactions actually exist. The words of the statute now precisely track the formula of § 165(c)(1) and (2) of the Code:

> § 165(c) LIMITATION OF LOSSES OF INDIVIDUALS.—In the case of an individual, the deduction under subsection (a) shall be limited to—
>
> > (1) losses incurred in a trade or business;
> >
> > (2) losses incurred in any transaction entered into for profit, though not connected with a trade or business....

26 U.S.C. § 165 (1988). It is unlikely that Congress meant anything different by its use of these terms of art in section 108 of the 1984 Act as amended by the 1986 Act, from what the same terms have meant in section 165 for many years.

Were Cook's argument applied to section 165, it might suggest that losses incurred in any trade or business were deductible, even though the transactions generating the paper losses lacked any economic sub-

2. Other Circuits have also affirmed *Glass. See Dewees v. Commissioner*, 870 F.2d 21 (1st Cir. 1989); *Friedman v. Commissioner*, 869 F.2d 785 (4th Cir.1989); *Killingsworth v. Commissioner*, 864 F.2d 1214 (5th Cir.1989); *Ratliff v. Commissioner*, 865 F.2d 97 (6th Cir.1989); *Yosha v. Commissioner*, 861 F.2d 494 (7th Cir.1988); *Kirchman v. Commissioner*, 862 F.2d 1486 (11th Cir.1989).

stance. Cook's construction might also mean that a person who owned a seat on a commodities exchange during the relevant years could, by an economically meaningless shuffling of paper, shelter his income from ordinary income rates. In light of the long established construction of section 165, these unlikely interpretations of the intent of section 108 cannot withstand the parallel between section 108 as amended and section 165.

Tax recognition is generally denied to paper losses in transactions having no economic effect, whether they take place in a trade or business or not, without ever reaching the issue of whether the transactions are motivated by profit. See *Gregory v. Helvering*, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1935). Once Congress amended section 108 in 1986 to make the language on commodities straddles track the traditional section 165 language, it eliminated the need to construe section 108 in a fashion distinct from section 165. *Cf. Landreth v. Commissioner*, 859 F.2d 643, 648 (9th Cir.1988) (after the 1986 amendment, "the 'entered into for profit' language in section 108 should be interpreted in the same way as the identical language in section 165(c)(2)."); *Miller v. Commissioner*, 836 F.2d 1274 (10th Cir.1988); *accord Glass*, 87 T.C. at 1166.

Cook suggests that we accept his construction based upon remarks in the legislative history. The legislative history, though, is considerably harder to construe than the statute. Remarks on the floor by Senators and Representatives cast doubts on which parts of the legislative history should be used. *See Landreth v. Commissioner*, 859 F.2d 643, 646 n. 8 (9th Cir. 1988). We apply the words of the statute as voted upon by both Houses and signed into law by the president, without an unreliable exploration of the intentions of various individual actors in the legislative process. *See Miller v. Commissioner of Internal Revenue*, 836 F.2d 1274, 1281–1282 (10th Cir.1988).

We construe the word "loss" in section 108 in accord with the ordinary English meaning of the word, its structural parallel in section 165 of the Code, and the 55 year old *Gregory* tradition. In an economic sham transaction, there is no recognizable loss in section 165, so there is none under the parallel language in section 108.

Because we resolve the case by finding no "loss" capable of recognition for tax purposes, we do not reach Cook's second issue, whether section 108 as amended applies to straddle transactions on foreign exchanges.

Affirmed.