954 F.2d 836
 69 A.F.T.R.2d 92-707, 92-1 USTC P 50,079
 Hilary P. GARDNER; Judith C. Gardner; Reed Clark; Audrey
Clark; Dominick A. Cademartori; Jean E. Cademartori;
Ralph G. Kazi; Jean Kazi; Charles H. Falk; Joan Falk;
Arturo Sterling; Lydia Sterling; Daniel Gutman; and
Judith Gutman, Petitioners-Appellants-Cross-Appellees,
Terence J. Horn and Jean Horn, Petitioners-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee-Cross-Appellant.
 Nos. 738, 739, 597, 598, 740, 599, 741, 600, 742, 601, 743,
602, 744, 603, 745, 604, 746, 605, 747, 748, 606, 749, 607,
608, 750, 609, 751, 752, 610, 611, 753, 612, 754, 613, 755,
614, 756, 615, 616, 757, 617, 758, 618, 759, 619, 620 and
760, Dockets 90-4140(L), 90-4141, 90-4142, 90-4143, 90-4144,
90-4146, 90-4148, 90-4150, 90-4152, 90-4154, 90-4156,
90-4158, 90-4160, 90-4162, 90-4164, 90-4166, 90-4168,
90-4170, 90-4172, 90-4174, 90-4176, 90-4178, 90-4180,
90-4182, 90-4186, 90-4188, 91-4026, 91-4038, 91-4054,
91-4056, 91-4068, 91-4070, 91-4072, 91-4074, 91-4076,
91-4078, 91-4080, 91-4082, 91-4086, 91-4088, 91-4090,
91-4092, 91-4094, 91-4096, 91-4098, 91-4100 and 91-4118.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 10, 1992.
Decided Jan. 22, 1992.
 
 Elias Rosenzweig (Stanley Klein, Michael Weitzner, Brauner, Baron, Rosenzweig, Kligler, Sparber, Bauman & Klein, New York City, of counsel), for appellants.
 Shirley D. Peterson, Asst. Atty. Gen., Washington, D.C. (Gary R. Allen, Kenneth L. Green, Kimberly S. Stanley, Attys., Tax Div., Dept. of Justice, of counsel), for appellees.
 Before ALTIMARI, MAHONEY and WALKER, Circuit Judges.
 PER CURIAM:
 
 
 1
 This case is part of the second wave of "straddle" cases to come before the federal courts. In the first wave, purchasers of commodity straddles challenged the Commissioner of Internal Revenue's denial of loss deductions taken pursuant to closing out the loss legs of their straddles. The Tax Court, in the landmark case of Glass v. Commissioner, 87 T.C. 1087 (1986), determined that the straddles were sham transactions that lacked economic substance. Accordingly, the Tax Court upheld the Commissioner's denial of these deductions. On appeal, the Glass decision has been affirmed in nine of our sister circuits. Dewees v. Commissioner, 870 F.2d 21 (1st Cir.1989); Friedman v. Commissioner, 869 F.2d 785 (4th Cir.1989); Killingsworth v. Commissioner, 864 F.2d 1214 (5th Cir.1989); Ratliff v. Commissioner, 865 F.2d 97 (6th Cir.1989); Yosha v. Commissioner, 861 F.2d 494 (7th Cir.1988); Lee v. Commissioner, 897 F.2d 915 (8th Cir.1989); Keane v. Commissioner, 865 F.2d 1088 (9th Cir.1989); Bohrer v. Commissioner, 945 F.2d 344 (10th Cir.1991); Kirchman v. Commissioner, 862 F.2d 1486 (11th Cir.1989). We can only hope that the first wave of challenges has at last broken.
 
 
 2
 Despite this impressive record of failure, the purchasers of straddles have not given up. Courts are now faced with the second wave of challenges, this time brought by a particular purchaser subgroup, namely commodities dealers or brokers who purchased straddles for their own account. These brokers assert that, in contrast to their customers, they are entitled to take loss deductions derived from straddle transactions As authority for this startling proposition, the taxpayers point to § 108(b) of the Deficit Reduction Act of 1984, Pub.L. No. 98-369, § 108(b), 98 Stat. 494, 630 as amended by the Tax Reform Act of 1986, Pub.L. No. 99-514, § 1808(d)(2), (4), 100 Stat. 2085, 2817-2818, reprinted at I.R.C. (26 U.S.C.) § 1092 note (1988) (hereinafter § 108(b)), which provides that "[f]or purposes of subsection (a), [which covers pre-1982 straddle transactions], any loss incurred by a commodities dealer in the trading of commodities shall be treated as a loss incurred in a trade or business." This theory was first put forth and rejected in Cook v. Commissioner, 90 T.C. 975 (1988), aff'd, 941 F.2d 734 (9th Cir.), cert. denied --- U.S. ----, 112 S.Ct. 172, 116 L.Ed.2d 135 (1991).
 
 
 3
 Undeterred by Cook and Glass, the petitioners here, associates of Czarnikow-Rionda Company, Inc., Czarnikow-Rionda Trading Company, Inc., and/or Rionda de Pass Ltd. (and their spouses) assert that their status as commodities brokers entitled them to take deductions for the loss legs of commodities straddles they entered into on the London Metals Exchange. The petitioners stipulated that their transactions were the same as those found to be shams in Glass and affirmed as such by every court to consider them.
 
 
 4
 The Tax Court rejected petitioner's claim. Fox v. Commissioner, 56 T.C.M. (CCH) 863 (1988). Citing our decision in DeMartino v. Commissioner, 862 F.2d 400 (2d Cir.1988), the Tax Court concluded that Congress did not intend the section 108(b) presumption to apply to transactions that were "prearranged or shams in substance." Fox, 56 T.C.M. (CCH) at 869. Since the taxpayers had stipulated that their transactions were similar to the transactions in Glass, the Fox court concluded that the transactions at issue were shams. Id. at 868. Accordingly, the court affirmed the Commissioner's denial of the deduction.
 
 
 5
 After issuing its opinion in Fox, the Tax Court withheld entry of judgment in order to allow the parties to submit computations under Tax Court Rule 155. In the rule 155 proceeding, petitioners raised a host of equitable and legal claims in an effort to win back some of the deductions denied by the court in its main decision. In Kazi v. Commissioner, 61 T.C.M. (CCH) 1759 (1991), the Tax Court rejected these claims as being either outside the scope of the Rule 155 proceeding, outside the jurisdiction of the Tax Court, or unsupported by law. Petitioners appeal from the decisions in Fox and Kazi.
 
 
 6
 Since appeals from the Tax Court are taken to the circuit in which the taxpayer resides, I.R.C. § 7482(b)(1)(A), the Fox and Kazi decisions were presented for review simultaneously in the Second, Third, and District of Columbia Circuits. The Third Circuit, in a thorough and well-reasoned opinion, affirmed the Tax Court in all respects. Lerman v. Commissioner, 939 F.2d 44 (3d Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 590, 116 L.Ed.2d 615 (1991). We agree with the Third Circuit and therefore affirm as well.
 
 Background
 
 7
 The basic structure of the commodities future straddle has been explained quite carefully elsewhere. See Dewees v. Commissioner, 870 F.2d 21 (1st Cir.1989). For the purposes of this opinion, it suffices to say that the straddles at issue here were structured so as to insure an ordinary loss in the first year and a corresponding capital gain in the second year. The loss in the first year could be used to offset ordinary income while the gain in the second year would be taxed at the lower, capital gains rate. In effect, the straddle allowed the taxpayer both to get an interest free loan from the government and to reap the difference between tax rates for ordinary income and capital gains.
 
 
 8
 Because straddles represented a nearly foolproof way to defer taxes, Congress in 1984 enacted section 108. § 108(a) [as amended in 1986] provides that
 
 
 9
 in the case of any disposition of 1 or more positions ... [which] form part of a straddle ... any loss from such disposition shall be allowed for the taxable year of the disposition if such loss is incurred in a trade or business, or ... in a transaction entered into for profit.
 
 
 10
 In other words, straddle losses are deductible only when derived from a profit motivated straddle transaction, rather than from a tax motivated transaction. In the 1986 amendments to Section 108, Congress added section 108(b), which provides an irrebuttable profit motive presumption to straddle transactions entered into by commodities brokers. Petitioners here assert that this irrebuttable presumption legitimates their straddle losses, notwithstanding their concession in the Tax Court that the transactions were shams, entered into solely for tax purposes, that lacked economic substance.
 
 Discussion
 
 11
 Since Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1935), it has been settled law that "for transactions to be recognized for tax purposes they must have economic substance." Lerman, 939 F.2d at 52. Petitioners contend that Congress overturned this long applicable norm of tax law when it enacted section 108(b). They argue that Congress intended that commodities brokers be allowed to recognize losses suffered in straddle transactions, even when those transactions lacked any economic substance. Petitioners boldly assert that Congress intended to present commodities brokers with a special favor, in effect a cash grant, and that the Tax Court improperly denied them their bounty.
 
 
 12
 Petitioners' argument, though not wholly implausible, is foreclosed by our decision in DeMartino v. Commissioner, 862 F.2d 400 (1988). There we rejected a similar claim brought by a broker in crude oil futures. We noted that as a general rule "a statute should not be interpreted to produce an absurd or unreasonable result," id. at 407, like giving tax consequences to a sham transaction. We saw no reason to depart from that general rule, since the petitioner's argument was inconsistent with the plain language of the statute. Specifically, we stated that "the taxpayer's argument ignores the opening clause of section 108(b), '[f]or purposes of subsection (a),' which makes the presumption of section 108(b) applicable only when section 108(a) applies to the transaction. Section 108(a) does not apply to straddle transactions that are shams." Id. Accordingly, we concluded that the section 108(b) presumption did not apply and upheld the disallowance of the loss.
 
 
 13
 Petitioners attempt to distinguish DeMartino on the ground that the transactions in DeMartino were "prearranged, contrived transactions conducted in a market rigged to produce tax losses." DeMartino, 862 F.2d at 406. In contrast, petitioners assert that the transactions at issue here were real transactions, albeit ones that lacked economic substance.
 
 
 14
 We do not think the holding of DeMartino is limited to "contrived transactions" in a "rigged market". DeMartino defined sham transactions to include transactions that are "fictitious or ... [lacking] business purpose or economic effect other than the creation of tax deductions." Id. In their stipulation, the taxpayers effectively concede that their transactions meet the DeMartino definition of a sham. Accordingly, DeMartino 's conclusion that section 108(b) does not apply in these circumstances is binding.
 
 
 15
 Even were we not bound by DeMartino, we would agree with the Third Circuit that "[t]here is no sound reason to conclude that, in enacting the amendments to section 108(b), Congress meant to abandon the [economic substance] doctrine." Lerman, 939 F.2d at 54. Instead, we think "the much more logical conclusion is that ... section 108 eliminated the profit motive inquiry in cases involving dealers because of the inherent difficulty in making such an inquiry, but it did not prevent inquiry into the economic substance of a dealer's commodities transactions." Id. at 55. Since the taxpayers concede that their straddle transactions lacked economic substance, and since it is well established that a subjective profit motive can not save a transaction that objectively lacks economic substance, see Knetsch v. United States, 364 U.S. 361, 365, 81 S.Ct. 132, 134, 5 L.Ed.2d 128 (1960); Lerman, 939 F.2d at 55; Forseth v. Commissioner, 845 F.2d 746, 748 (7th Cir.1988), we agree with the Tax Court and the Third Circuit that the straddle transactions did not create any recognizable losses.
 
 Conclusion
 
 16
 We have considered the remainder of petitioners' arguments and find them to be without merit. Further, we agree with the Tax Court's disposition of petitioners' Rule 155 motions. Accordingly, we affirm the decision of the Tax Court in all respects.
 
 
 17
 Affirmed.