ALBERT J. AND MARIE A. ALESSANDRA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Alessandra v. Commissioner
Docket Nos. 13808-82, 12407-83, 431-90
United States Tax Court
T.C. Memo 1994-584; 1994 Tax Ct. Memo LEXIS 597; 68 T.C.M. (CCH) 1288; December 1, 1994, Filed *597 For Albert J. Alessandra, petitioner: F. Whitten Peters. William M. Wiltshire, docket Nos. 13808-82 and 12407-83 only. For Marie J. Alessandra, petitioner: W. James Slaughter and Donald E. Slaughter. For respondent: Wilton A. Baker. PANUTHOS
PANUTHOS
MEMORANDUM OPINION PANUTHOS, Chief Special Trial Judge: This case was assigned pursuant to the provisions of section 7443A(b)(4) and Rules 180, 181, and 183, [1] and comes before the Court on petitioner Albert J. Alessandra's (petitioner) Motion for Partial Summary Judgment filed pursuant to Rule 121, in which petitioner Marie J. Alessandra joins. For simplicity, we refer to the motions in the singular as the motion filed by petitioner. At the time of filing the petitions, petitioners resided in Rolling Hills Estates, California. In *598 his motion for partial summary judgment, petitioner seeks a determination that section 108 of the Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat. 494, as amended by the Tax Reform Act of 1986, [2] Pub. L. 99-514, 100 Stat. 2085, applies to allow petitioners' deductions of losses incurred in certain transactions. "A partial summary adjudication may be made which does not dispose of all the issues in the case." Rule 121(b); Naftel v. Commissioner, 85 T.C. 527, 529 (1985). We grant a motion for summary judgment only where the moving party is able to show that "there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Rule 121(b); Naftel v. Commissioner, supra;Espinoza v. Commissioner, 78 T.C. 412, 416 (1982). The burden of proving that there is no genuine issue of material fact is on the moving party -- in this instance, petitioner. Naftel v. Commissioner, supra;Espinoza v. Commissioner, supra.In deciding a motion for summary judgment, we must view the factual materials and inferences *599 drawn therefrom in the light most favorable to the nonmoving party. Naftel v. Commissioner, supra.
Respondent determined deficiencies in petitioners' Federal income taxes and additions to tax as follows: Additions to Tax
Year
Deficiency
Sec. 6653(a)
Sec. 6653(a)(1)
Sec. 6653(a)(2)
1978 $ 1,794.00   --
--
--  1979
32,779.82 $ 1,638.99
--
--  1980
165,285.00
8,264.25
--
--  1981
1,528,978.00
-- $ 76,448.90
50% of the interest  due on the deficiency  The deficiencies resulted, in large part, from petitioner's participation in programs promoted by Futures Trading, Inc. (FTI) and Merit Securities, Inc. (Merit). Petitioner, through WFM #1 partnership, invested in Merit Treasury Bill (T-Bill) and Treasury Bond (T-Bond) option programs, and, individually, participated in the FTI Arbitrage and Carry program, Merit T-Bill and T-Bond option programs, and the Merit Stock Forward Contract *600 program. These programs were the subject of exhaustive litigation resulting in prior opinions by this Court, in which we held the programs to be economic shams. See Seykota v. Commissioner, T.C. Memo. 1991-234, supplemented by T.C. Memo. 1991-541. An economic sham, or a sham in substance, exists when a series of transactions actually takes place but has no business or profit-making function apart from obtaining tax benefits. Casebeer v. Commissioner, 909 F.2d 1360, 1365 (9th Cir. 1990), affg. T.C. Memo. 1987-628, affg. Sturm v. Commissioner, T.C. Memo. 1987-625, affg. Moore v. Commissioner, T.C. Memo. 1987-626, affg. in part and revg. in part Larsen v. Commissioner, 89 T.C. 1229 (1987); Falsetti v. Commissioner, 85 T.C. 332, 347 (1985). In Seykota v. Commissioner, supra, we also held the Merit T-Bill and T-Bond option programs, and Merit Stock Forward Contracts Program to be factual shams. A factual sham exists *601 when the alleged transaction is fake or fictitious. Forseth v. Commissioner, 85 T.C. 127, 166 (1985), affd. 845 F.2d 746 (7th Cir. 1988), affd. sub nom. Enrici v. Commissioner, 813 F.2d 293 (9th Cir. 1987), affd. sub nom. Mahoney v. Commissioner, 808 F.2d 1219 (6th Cir. 1987); affd. without published opinions sub nom. Bramblett v. Commissioner, 810 F.2d 197 (5th Cir. 1987), Wooldridge v. Commissioner, 800 F.2d 266 (11th Cir. 1986); Freytag v. Commissioner, 89 T.C. 849 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991); Brown v. Commissioner, 85 T.C. 968, 1000 (1985), affd. sub nom. Sochin v. Commissioner, 843 F.2d 351 (9th Cir. 1988). Petitioners were not parties to the Seykota v. Commissioner, supra, litigation.[3]
*602 During the years at issue, petitioner was an experienced commodities trader. In September 1978, petitioner purchased a seat on the American Commodities Exchange (ACE) for $ 7,500. The ACE was a domestic board of trade designated for the first time on September 12, 1978, as a contract market by the Commodity Futures Trading Commission. The ACE continued to be designated as a contract market for futures contracts on Government National Mortgage Association mortgages, 90-day T-Bills, and 20-year T-Bonds through late 1980, when it was merged into the New York Futures Exchange. Petitioner claims that he is a "commodities dealer" within the meaning of section 108(f) and that, under section 108(b), he is entitled to deduct his losses in trading commodities. According to petitioner, section 108(b) provides that losses incurred by a commodities dealer in the trading of commodities are afforded an irrebuttable presumption that such losses were incurred in a trade or business and are thus deductible under section 108(a). Respondent contends that section 108 does not apply to the FTI and Merit programs because the programs were sham transactions, and, if section 108 did apply, petitioner *603 would not be able to deduct his losses because he was not a "commodities dealer" within the meaning of section 108(f). Section 108 states in relevant part: (a) General Rule. -- For purposes of the Internal Revenue Code of 1954, in the case of any disposition of 1 or more positions -- (1) which were entered into before 1982 and form part of a straddle, and (2) to which the amendments made by title V of the Economic Recovery Tax Act of 1981 do not apply,
any loss from such disposition shall be allowed for the taxable year of the disposition if such loss is incurred in a trade or business, or if such loss is incurred in a transaction entered into for profit though not connected with a trade or business. (b) Loss Incurred in a Trade or Business. -- For purposes of subsection (a), any loss incurred by a commodities dealer in the trading of commodities shall be treated as a loss incurred in a trade or business. * * * (e) Straddle. -- For purposes of this section, the term "straddle" has the meaning given to such term by section 1092(c) of the Internal Revenue Code of 1954 as in effect on the day after the date of the enactment of the Economic Recovery Tax Act of 1981, *604 and shall include a straddle all the positions of which are regulated futures contracts. (f) Commodities Dealer. -- For purposes of this section the term "commodities dealer" means any taxpayer who -- (1) at any time before January 1, 1982, was an individual described in section 1402(i)(2)(B) of the Internal Revenue Code of 1954 (as added by this subtitle), or (2) was a member of the family (within the meaning of section 704(e)(3) of such Code) of an individual described in paragraph (1) to the extent such member engaged in commodities trading through an organization the members of which consisted solely of -- (A) 1 or more individuals described in paragraph (1), and (B) 1 or more members of the families (as so defined) of such individuals.
Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 108(a), 98 Stat. 494, 630, as amended by Tax Reform Act of 1986, Pub. L. 99-514, sec. 1808(d), 100 Stat. 2085, 2817. Section 1402(i)(2)(B) defines "commodities dealer" as -- a person who is actively engaged in trading section 1256 contracts and is registered with a domestic board of trade which is designated as a contract market by the Commodity Futures Trading Commission.
*605 Section 1256 defines "section 1256 contract" as follows: (b). Contract Defined. -- For purposes of this section, the term "section 1256" means -- (1) any regulated futures contract, (2) any foreign currency contract, (3) any nonequity option, and (4) any dealer equity option.
This Court has consistently held that section 108 does not apply to commodities dealers whose transactions were devoid of economic substance. Krumhorn v. Commissioner, 103 T.C. 29, 50 (1994); Cook v. Commissioner, 90 T.C. 975 (1988) (Court reviewed), affd. 941 F.2d 734 (9th Cir. 1991); Fox v. Commissioner, T.C. Memo. 1988-570, affd. sub nom. Gardner v. Commissioner, 954 F.2d 836 (2d Cir. 1992), affd. sub nom. Lerman v. Commissioner, 939 F.2d 44 (3d Cir. 1991), revd. sub nom. Horn v. Commissioner, 968 F.2d 1229 (D.C. Cir. 1992). This case is appealable to the Court of Appeals for the Ninth Circuit. See Golsen v. Commissioner, 54 T.C. 742 (1970), affd. *606 445 F.2d 985 (10th Cir. 1971). The Court of Appeals for the Ninth Circuit, in affirming Cook v. Commissioner, supra, also held that section 108 does not apply to commodities dealers whose transactions were devoid of economic substance. Cook v. Commissioner, 941 F.2d 734 (9th Cir. 1991), affg. 90 T.C. 975 (1988). Petitioner suggests, however, that we adopt the reasoning of the Court of Appeals for the District of Columbia Circuit, which, in reversing Fox v. Commissioner, supra, stated: section 108 was drafted to provide commodities dealers (defined as those who trade regulated futures contracts) a presumption that their straddles (whether or not those straddles were in regulated futures contracts) were established in a trade or business. * * *
Horn v. Commissioner, 968 F.2d 1229, 1243 (D.C. Cir. 1992), revg. Fox v. Commissioner, supra.We note, however, that appeals of Fox v. Commissioner, supra, were also brought to the Courts of Appeals for the Second and *607 Third Circuits by two other petitioners. Both of these courts, in affirming Fox v. Commissioner, supra, stated that section 108 was not intended to override the long-standing requirement that transactions have economic substance to be qualified for loss deduction. Gardner v. Commissioner, 954 F.2d 836 (2d Cir. 1992), affg. Fox v. Commissioner, supra;Lerman v. Commissioner, 939 F.2d 44 (3d Cir. 1991), affg. Fox v. Commissioner, supra.Therefore, the Courts of Appeals for the Second and Third Circuits are in accord with the Ninth Circuit in holding that section 108 does not apply to commodities dealers claiming losses from transactions that are factual or economic shams. Under the decisions by this Court and the Courts of Appeals for the Ninth, Second, and Third Circuits, petitioner, merely by showing that he is a "commodities dealer" within the meaning of section 108(f), is not afforded the irrebuttable presumption that his losses from commodities transactions were incurred in a trade or business, and thus are deductible. [4] As *608 the Court of Appeals for the Ninth Circuit pointed out, a commodities dealer must incur a "loss" to be entitled to the presumption. Cook v. Commissioner, 941 F.2d 734, 737-738 (9th Cir. 1991), affg. 90 T.C. 975 (1988). Because the language of section 108 was amended to track section 165, section 108 should be applied similarly to section 165. Id. at 738. "In an economic sham transaction, there is no * * * [recognition of loss under] section 165, so there is none under the parallel language in section 108." Id.Section 108 does not apply to allow commodities dealers loss deductions by reason of participation in factual or economic sham transactions. Id.
Because we hold that section 108 does not apply *609 to commodities dealers whose transactions were shams, petitioner, in order to prevail on this motion for partial summary judgment, would have to show that the FTI and Merit transactions were not factual or economic shams. As already stated, these programs were the subject of Seykota v. Commissioner, T.C. Memo. 1991-234, supplemented by T.C. Memo. 1991-541, in which we held the Merit programs to be factual and economic shams and the FTI program to be an economic sham. In light of that holding, we conclude that petitioner has failed to show, for purposes of this partial summary judgment motion, that his transactions generated losses deductible under section 108. Accordingly, petitioner's motion is denied. An appropriate order will be issued.
Footnotes
1. Unless otherwise indicated, all section references, with the exception of sec. 108↩, are to the Internal Revenue Code in effect for the tax year at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.
2. Hereinafter, this section is referred to as "section 108↩".
3. We do not opine as to whether petitioners implicitly or explicitly agreed to be bound by Seykota v. Commissioner, T.C. Memo. 1991-234, supplemented by T.C. Memo. 1991-541↩, or whether they should be collaterally estopped from relitigating issues in that case, because these matters have not been raised.
4. Because we hold that sec. 108↩ does not apply to commodities dealers whose transactions were devoid of economic substance, we do not decide whether petitioner was a "commodities dealer" within the meaning of the statute.